271 So.2d 618 (1972)
Alvin L. ROSS, Plaintiff-Appellant,
v.
CITY OF COVINGTON, Defendant-Appellee.
No. 9083.
Court of Appeal of Louisiana, First Circuit.
December 26, 1972.
Rehearing Denied January 31, 1973.
Writ Refused March 15, 1973.
Guy L. Deano, Jr., Covington, for plaintiff-appellant.
Dalton J. Barranger, Garic K. Barranger, Covington, for defendant-appellee.
*619 Before LANDRY, TUCKER and PETERS, JJ.
Rehearing En Banc Denied January 31, 1973.
PETERS, Judge ad hoc.
Alvin L. Ross brought a possessory action against the City of Covington, alleging that he enjoys the peaceful possession of Lots 9, 10 and 11 of Square 15 of the Division of St. John to the City of Covington, and
Also a piece of ground in said Square 15, Division of St. John of above said town, beginning at rear corner of Lot 11 thereof on the public alley; thence 50 feet along rear line of Lot 11; thence 24 feet along rear line of Lot 8; thence on line parallel with rear line of Lot 11, 50 feet to alley; thence along alley 24 feet to point of beginning; with buildings and improvements thereon.
However, the City of Covington served notice on plaintiff claiming ownership of a portion of this property and ordered him to remove his fence from the property or the City would remove it. Plaintiff contends this action by the City disturbed his peaceful possession of the property. A temporary restraining order was granted to plaintiff prohibiting the City from removing the fence and the matter was set for hearing on plaintiff's request for a preliminary injunction.
The City filed peremptory exceptions of no cause of action and no right of action which were referred to the merits. The defendant then answered the petition, denied the allegations of the plaintiff's possessory action and reconvened, claiming title to the property in dispute is vested in the public by virtue of an act of dedication. Plaintiff filed an answer to the reconventional demand in which he specifically pleaded his title of August 28, 1940, and those of his ancestors in title, and pleaded the acquisitive prescription of 10 and 30 years possession. Judgment was rendered in favor of the City in which the trial court concluded that title to the property in dispute was vested in the public.
Plaintiff acquired the property in Square 15 of the Division of St. John by deed dated August 28, 1940. The Division of St. John forms an extremely old part of the City of Covington which was first settled and developed. The original owner, John Wharton Collins, developed the property and laid out his holdings into lots, squares, streets and alleys.
There is a unique aspect to the Division of St. John in that the squares contain 16 lots, all with footage on the four surrounding streets, but each square is traversed by an alley 20 feet in width. In the center of the square, the alley broadens out and forms a small square, the dimensions of which are 120' × 120', the result being a square within a square. These small squares inside the larger squares have historically been called "ox lots", although they actually are a part of the alley. Square 15 of the Division of St. John contains such a configuration.
Maps and surveys introduced into the record show that Lots 9, 10 and 11 are located in the Northeast portion of Square 15 and all face Florida Street. Lots 9 and 10 are in the extreme Northeast corner of the Square and neither lot abuts the boundaries of the inner square, or ox lot. However, the rear boundary line of Lot 11 is adjoined to and forms the Northeast line of the ox lot of the square.
Both sides concede plaintiff's ownership and use of Lots 9, 10 and 11 as described in his deed. The controversy arises over the ownership of the 24' × 50' piece of property described above, located to the rear of Lot 11, and squarely within the area called the "ox lot."
The only issue in this case is whether there has ever been a dedication to the public of that portion in Square 15 called the "ox lot." Plaintiff concedes that if the property was ever dedicated to the public, he could not gain title by acquisitive prescription. However, plaintiff argues strenuously there has never been a valid dedication.
*620 Louisiana recognizes two types of dedication, statutory and implied or common law. A common law dedication confers only a servitude of use on the public and such dedication must be accepted by the public to be effective. A statutory dedication is complete without the necessity of acceptance or use by the public. See Arkansas-Louisiana Gas Co. v. Parker Oil Co., Inc., 190 La. 957, 183 So. 229 (1938).
The Louisiana Statute controlling statutory dedication is Act 134 of 1896 (LSA-R.S. 33:5051) which provides, in substance, that, whenever the owner of a real estate desires to subdivide the same into squares or lots with the streets and alleys, he shall first make a map of the real estate to be divided and record the same in the Conveyance Records of the Parish where the property is located. He is additionally required to note on the map, inter alia, a proper description of the alleys, squares, lots, and streets and also a formal dedication to the public use by the owner of all the lots, streets, alleys, and public squares shown on the map.
Our courts have held that when dealing with subdivisions created prior to the enactment of Act 134 of 1896, the sale of lots in accordance with a plat or plan of subdivision constituted an irrevocable dedication to the public of the streets and alleys shown thereon. Also, this same rule has been applied to subdivisions created after 1896, when the provisions of Act 134 of 1896 were not strictly complied with or were not mentioned. Parish of Jefferson v. Doody, 247 La. 839, 174 So.2d 798 (1965); Iseringhausen v. Larcade, 147 La. 515, 85 So. 224 (1920); Banta v. Federal Land Bank of New Orleans, 200 So.2d 107 (La.App. 1st Cir. 1967); Esposito v. Gaudet et al., 8 So.2d 783 (La.App. Orleans 1942). Thus, if it is shown that dedication occurred prior to 1896, the rights acquired by the public to the property will not be diminished in the absence of strict compliance with the requirements of Act 134. In any event, regardless of the method used, the intent to dedicate must be clearly established by the evidence.
On March 19, 1814, John Wharton Collins recorded in the Conveyance Records of St. Tammany the following document:
"STATE OF LOUISIANA
PARISH OF ST. TAMMANY
Be it remembered, that on the nineteenth day of March in the year of Our Lord, one thousand eight hundred and fourteen, John W. Collins, deposited, in this office, the plan of a portion of Land, laid and under the title of the division of St. John of Wharton, founded the fourth of July, 1813 and Humbly dedicated to the late President of the United States, Thomas Jefferson and thereby reserving to the purchasers of Lots, the rights in common of all Streets, Alleys, Water Courses and Timber, Trees, that are within the plan and extent of said portion of lands, and reserving to himself the privilege of extending any Square and forming new ones according to the said plan. In testimony whereof I have hereto set my hand and seal the day and date above written.
Signed, Sealed and acknowledged J. W. Collins before me, the date above written.
 James Tate for
 St. Tammany
Recorded 19th March 1814." (emphasis added)
Plaintiff argues that the language in this document shows that John W. Collins never intended to dedicate the ox lots to the public but rather these inner squares were reserved for the common use of the owners adjoining the ox lots; i.e., these inner squares were private property owned in indivision by the owners of the adjoining lots for the use to which they saw fit. *621 Consequently, being private property, these inner squares were subject to the acquisitive prescription provisions of 10 and 30 years.
The City contends that this document was a dedication by Collins to the public of all the alleys and squares comprising the subdivision, which would include the ox lots. To substantiate its argument, the City presented the testimony of several older life-long residents of the area who related their use of the ox lots as parking areas for their horses and wagons while shopping or transacting business in the City.
Neither party could produce the original map to the subdivision. However, numerous maps and surveys, several of which were quite old, were placed in the record by plaintiff, all of which uniformly show the outline of Square 15 as containing the ox lot. Additionally, Mr. Robert Berlin and Mr. C. R. Schultz, registered land surveyors, testified as to their use and reliance on old maps showing this subdivision in their work as surveyors, and the ox lots were contained therein. Mr. Schultz, who is 80 years of age, testified that as early as 1914 he recalled using the maps of St. John Division with the ox lots noted thereon. In addition to the maps and surveys, plaintiff introduced numerous deeds and sales by Collins of Lots in the Division of St. John, dating from 1813 to 1817, which state that the sales were made pursuant to a plan and map duly recorded. It is also noteworthy that while the sale of the three lots to plaintiff were with all legal warranties, the sale of the disputed property is expressly sold "without warranty or recourse."
The trial court concluded that the City had shown the necessary intent on the part of John Wharton Collins to dedicate the ox lots to the public. Applying the legal principles given above to the facts in this case, we agree with the conclusion of the trial court that the City has sufficiently shown the property in dispute to be vested in the public. All the maps presented in the evidence including a 1970 survey reflect the presence of the ox lot in the square. Testimony of the witnesses preponderates that the citizens of the community have considered the ox lots as part of the public domain and have used them in that manner for years. In our opinion this reflects an acceptance by the public of the use of the property as intended by the dedicator. We are particularly impressed with the fact that the sale of the disputed property was without recourse or warranty while Lots 9, 10 and 11 were sold with all guarantees. Again, this reflects an awareness by the citizens of the community that the inner square was not capable of acquisition.
It is also noteworthy that the ox lot is not peculiar just to the square in question, but is prevalent throughout the subdivision. If this were an isolated configuration in only one square, perhaps a valid argument could be made that the declaration by John Wharton Collins could grant to the owners of the larger square the common use of the ox lot area. However, the fact that the ox lots form a common design in the scheme of the Division of St. John, along with the uniform width of the alleys, streets, and lots, supports our conclusion they were intended by John Wharton Collins for the public use.
For the foregoing reasons, the judgment appealed is affirmed at appellant's cost.
Affirmed.