488 So.2d 340 (1986)
KALMN, INC., Plaintiff-Appellant,
v.
WALKER LOUISIANA PROPERTIES, et al., Defendants-Appellees.
No. 85-452.
Court of Appeal of Louisiana, Third Circuit.
May 14, 1986.
*341 Privat and Regan, Kenneth O. Privat, Crowley, for plaintiff-appellant.
Scofield, Bergstedt, Richard Gerard, Jr., Lake Charles, for defendants-appellees.
Before DOMENGEAUX and YELVERTON, JJ., and JACKSON, J. Pro Tem.[*]
ROBERT P. JACKSON, Judge Pro Tem.
This is a suit by plaintiff, Kalmn, Inc., against defendants, Walker Louisiana Properties, et al, seeking to cancel a one-half (½) mineral interest affecting certain property located in Jefferson Davis Parish, La, described as follows, to wit:
All of Section 12 and the East Half (E/2) of Section 11, Township 9 South, Range 5 West, La. Mer.
The facts have been agreed upon in stipulation.
On November 17, 1924, the Calcasieu National Bank of Southwest Louisiana sold the property in question to Rufus A. Estes, then married to and living with Goldie Wilson Estes, reserving an undivided 1/16th mineral interest.
On March 19, 1930, Rufus Estes, now divorced from Goldie Wilson Estes, in an instrument referred to as a "Sale" recognized, clarified and amended the prior mineral reservation to provide for an undivided one-half (½) mineral interest rather than the 1/16th mineral interest.
On January 14, 1935, Rufus Estes joined with the Trustees of the Calcasieu National Bank and Calcasieu Real Estate & Oil Company, Inc. in executing a mineral lease to Homer Tate for a primary term of three (3) years and ninety (90) days.
On December 5, 1942 Mrs. Goldie Todd, born Wilson, wife of John N. Todd, formerly wife of Rufus A. Estes, for a consideration of $500.00 and the assumption by Rufus A. Estes of certain community obligations, quitclaimed and renounced her interest in the subject property to Rufus A. Estes.
On December 15, 1942, Rufus A. Estes executed an authentic act described as an "acknowledgment."
The stipulation lists other instruments in the chain of title and facts relative to drilling operations and production on the property subsequent to December, 1942 to date. Suffice it to say that no landowner in the chain of title questioned the validity of the one-half (½) mineral interest presently owned by defendants until May 17, 1982 when the attorney for the plaintiff made a written demand by certified mail in accordance with LSA-R.S. 31:206 for a recordable instrument evidencing the extinguishment of the mineral interest.
The stipulated facts make it abundantly clear that unless the mineral interest prescribed prior to December 15, 1942, there has been sufficient user of the mineral servitude to interrupt the running of prescription and the mineral servitude would still be in existence.
A resolution of the question whether the mineral interest prescribed prior to 1942 turns on an interpretation of the instruments dated November 17, 1924, March 19, 1930 and January 14, 1935 (attached as Appendix A and Appendix B respectively). Even if the Court concludes that the mineral interest prescribed prior to the execution of the 1942 instrument this does not end the matter because defendants argue that the 1942 instrument can be construed to *342 have amounted to a sale and creation of a new mineral servitude commencing on December 15, 1942 even if the initial servitude had prescribed. Therefore, the legal effect of the December 15, 1942 (see infra at pages 7-8) instrument must be determined by the Court.
No mineral operations were conducted on the property between the date of purchase of Rufus A. Estes on November 17, 1924, and February 2, 1947 when the Continental No. 1 R.A. Estes Well was drilled.
In 1982 plaintiff Kalmn, Inc. filed an action to cancel the mineral servitude held by defendants Walker Louisiana Properties, AA Development Corporation, Globe Texas Company, Calcasieu Real Estate & Oil Company, Inc. and Tenneco Oil Company. In 1984 plaintiff moved for a Summary Judgment and a year later defendant Walker Properties filed a peremptory exception alleging prescription. Copious exhibits supporting both motions were filed in support. The lower court rendered its opinion on March 25, 1985. Judge William N. Knight, of the Thirty-First Judicial District, dismissed plaintiff's suit and denied defendants' Exception of Prescription, to which rulings the respective parties appeal.
In a well-reasoned opinion, the lower court succinctly defines the issues:
"It is the contention of plaintiff that the mineral servitude expired on November 17, 1934. Plaintiff says that the March 19, 1930 instrument was merely a correction instrument which relates back to the date of the sale, namely, November 17, 1924, Blevins v. Manufacturers Record Publishing Company, [235 La. 708], 105 So.2d 392 (La.1957), and since there was no drilling operations on the property during the ten (10) year period of time the mineral servitude prescribed on November 17, 1934. Plaintiff also contends that the December 15, 1942 instrument was only intended as an acknowledgment and interruption of prescription and since prescription once accrued cannot be interrupted, the instrument can have no legal effect since the servitude had become extinguished on November 17, 1934. Wise v. Watkins [222 La. 493], 62 So.2d 653 (La.1953). A servitude once extinguished can only be re-established by title. Lastly, plaintiff contends that the instruments dated March 19, 1930 and January 14, 1935 can only have legal effect as to Rufus A. Estes since when he acquired title to the property in 1924 he was married to Goldie Wilson Estes, making the purchase community property, and when he executed the 1930 and 1935 instruments he was previously divorced from her on October 23, 1928.
"Defendants have filed an exception of prescription contending that the plaintiff's attack on defendants' title to one-half (½) of the mineral rights constitutes an action in nullity which is prescribed under the ten (10) year prescriptive period of Louisiana Civil Code, Article 2221. Alternatively, they assert that the March 19, 1930 instrument and the 1935 Homer Tate Lease amounted to an acknowledgement and interruption of prescription and, therefore, the servitude was still in existence at the time the parties executed the December 15, 1942 instrument. Finally, that the 1942 act itself was sufficient to create a new mineral servitude with prescription commencing on the date of the act, even if the initial servitude had prescribed.
"The Court finds no merit to this contention. On December 5, 1942, Mrs. Goldie Todd, born Wilson, for valid consideration quitclaimed and renounced her interest in the subject property to her former husband, Rufus A. Estes. The Doctrine of After Acquired Title would cure her failure to execute the previous instruments which she did not join in.
"The Court finds no merit to defendant['s] exception of prescription. This is not a suit seeking to nullify or rescind an agreement or contract. This is a suit seeking to cancel a mineral interest which plaintiff contends expired for non-use in 1934. If they are correct, then the mineral interest prescribed and became non-existant. The landowner at the time would have benefited from this non-use of the mineral servitude and become the owner of the land *343 and expired mineral interest. There is a strong public policy in Louisiana against mineral servitudes existing longer than ten (10) years unless the prescriptive period is interrupted by acknowledgment or user. If the mineral servitude expired for non-use, it expired and a suit seeking cancellation can be filed at any time and the Court knows of no prescriptive period barring such a suit. Accepting defendants' argument no suit could have been filed by anyone after 1952. Plaintiff did not acquire title to the property until much later. Plaintiff was not a party to the other instruments and should not be prohibited from instituting this suit at this time.
"Courts are bound to give legal effect to all contracts according to the true intent of the parties to be determined by the words of the contract. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the party's intent. La. C. C., Article 2046 (former Article 1945); Rebstock v. Birthright Oil and Gas Company, 406 So.2d 636 (1 Cir.1981, writ denied) 407 So.2d 742 (La.1981). All clauses of agreements are interpreted one by the other to give each the sense that results from the entire act. La.C.C. Article 2050 (former Article 1955); Pendleton v. Shell Oil Company, 408 So.2d 1341 (La.1982). The aim of the interpretation is to discern a compatible meaning to all provisions of an agreement. Farrell v. Hodges Stockyards, Inc., 343 So.2d 1364 (La.1977). The Court will avoid neutralizing any provisions; if possible, practical effect will be given to all its parts according to each the sense that results from the entire agreement Lambert v. Maryland Casualty Company, 418 So.2d 553 (La.1982). La.C.C. Art. 2045 (Former Article 1950) directs the Court to ascertain the common intent of the parties when there is anything doubtful in the agreement. Henry v. Ballard and Cordell Corporation, 418 So.2d 1334 (La. 1982). In ascertaining the intention, when it cannot be discerned from the contract as a whole, the Court may inquire into the circumstances surrounding the parties at the time of contracting. Henry, supra; Cooley v. Meridian Lumber Company, 195 La. 631, 197 So. 255 (1940). A doubtbul provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. La.C.C. Art. 2053 (former Article 1953).

THE MARCH 19, 1930 INSTRUMENT
"On March 19, 1930, Rufus Estes, now divorced from Goldie Wilson Estes, in an instrument referred to as a sale recognized, clarified and amended the prior mineral reservation to provide for an undivided ½ mineral interest rather than a 1/16th mineral interest.
"Plaintiff contends that this instrument was merely a correction instrument which relates back to the date of sale, namely, November 17, 1924.
"The Court is bound to give legal effect to the instrument according to the true intent of the parties to be determined by the words of the instrument and all clauses of the instrument are to be interpreted one by the other so that each is given the meaning suggested by the instrument as a whole.
"The instrument is styled `sale' rather than `correction instrument', and although the instrument in part contains language generally used in correction instruments, including the words `... but through error an equal undivided one sixteenth (1/16) part only was accepted and reserved in said Act of sale.', and `... declare that they do hereby correct and amend said clause in said act of sale which excepted and reserved a part of the minerals so as to read as follows: ...' contains the following pertinent clause, to-wit:
`The said Rufus A. Estes, further declared that he does hereby convey, assign, transfer and deliver unto the said Calcasieu National Bank of Southwest Louisiana at Lake Charles, an equal undivided one half (½) part of all the oil, gas *344 sulphur and other minerals in, on and under the said described land or that may be produced therefrom, and reserves for himself, his heirs and assigns an equal undivided one half (½) part of any and all of said minerals and the same shall likewise be payable out of any royalty or cash bonuses received from said land, in said proportions, being one half (½) of each of the parties hereto, and to their heirs, successors and assigns, respectively.'
"Looking at the entire instrument and all of the clauses, the Court concludes that it was the intent of the parties that the instrument was more than a correction instrument and amounted to a present sale of one-half (½) of the minerals, or at least, an acknowledgment of the existence of the servitude and an interruption of prescription. Prescription began anew on the mineral servitude on March 19, 1930.

THE 1935 JOINT LEASE TO HOMER TATE
"The Court next needs to determine the legal effect, if any, of the execution of the 1935 joint lease to Homer Tate on the running of prescription on the mineral servitude.
"The lease was executed on January 14, 1935, by R.A. Estes, the landowner, and the owners of the outstanding one-half (½) mineral interest. The lease provides in part as follows.
`East (Each) of the lessors herein agrees that for a consideration paid by each to the other each lessor herein owns an undivided interest in all of the oil, gas, sulphur, or other minerals in said land contained and that may be produced therefrom and the same shall likewise be payable out of any royalty in minerals that may be received from said land as follows: R.A. ESTES 50% CALCASIEU NATIONAL BANK IN LAKE CHARLES AND RECONSTRUCTION FINANCE CORPORATION NEW ORLEANS LOAN AGENCY 30%, CALCASIEU REAL ESTATE & OIL CO. INC., 20%.'
"Defendants argue that when the Homer Tate Mineral lease was executed, the law of Louisiana was to the effect that when a landowner joins the mineral right owner as a lessor in a mineral lease, he thereby recognized the rights of his co-lessor and interrupted the course of the prescriptive period, citing Mulhern v. Haynes, 171 La. 1003, 132 So. 659 (1931). Counsel for defendants correctly point out that the Mulhern decision has been modified and, in fact, overruled insofar as it holds that the mere execution of a joint lease by the landowner and mineral owner has the effect of interrupting prescription. Nevertheless, that was the clear holding of the court at that time where the court said `... by joining in this lease plaintiff thereby recognized all of the rights of his co-lessors, and he cannot escape the effect of his written acknowledgment, which, in our opinion, we must hold to be an interruption of the then accruing prescription.' 171 La. 1003, 132 So. 660 (emphasis supplied). This was the law at the time of the execution of the 1935 Homer Tate lease. Evidently this was the intent of the parties because this is evidenced by the following language in the December 15, 1942, instrument, to-wit:
`Whereas, on January 14, 1935, the said Rufus A. Estes and the Trustees of the Calcasieu National Bank in Lake Charles, in Liquidation, and the Calcasieu Real Estate & Oil Co., Inc., executed a mineral lease to Homer Tate on the hereinabove described property and in said mineral lease Rufus A. Estes did recognize and interrupt the running of prescription of the one-half (½) mineral interest now owned by the Trustees of the Calcasieu National Bank in Lake Charles, in Liquidation, and the Calcasieu Real Estate & Oil Co., Inc.; and'
"The Court, therefore, concludes that when the parties to the 1935 Homer Tate Lease executed it jointly, they considered their action to be an acknowledgment and interruption of prescription thereby beginning a new ten (10) year prescriptive period on the mineral servitude.

*345 THE DECEMBER 15, 1942 INSTRUMENT
"This brings the Court to a discussion of the legal affect of the December 15, 1942 instrument.
"Plaintiff contends that the instrument was only intended as an acknowledgment and interruption of prescription and since prescription once accrued cannot be interrupted, the instrument can have no legal effect since the servitude had become extinguished on November 17, 1934. On the other hand, defendant asserts that the March 19, 1930 instrument and the 1935 Homer Tate Lease amounted to an acknowledgment and interruption of prescription, and, therefore, the servitude was still in existence at the time the parties executed the December 15, 1942 instrument. Defendants also assert that even if the Court should find that the 1930 and 1935 acts did not interrupt prescription, the 1942 act, in and of itself, is sufficient to create a new mineral servitude on the property.
"Again, the Court is bound to give legal effect to the instrument according to the true intent of the parties to be determined by the words of the instrument and all clauses of the instrument are to be interpreted one by the other so that each is given the meaning suggested by the instrument as a whole.
"Clearly the instrument amounts to an acknowledgment of the running of prescription. This is conceded by plaintiff and since the Court has already held that the 1930 and 1935 acts did amount to the interruption of prescription, the 1942 act clearly had the effect of further acknowledging and interrupting prescription on the mineral servitude.
"If the Court is wrong in its holding that the 1930 and 1935 acts did interrupt prescription, the Court is of the opinion that it was the intent of the parties to create a new mineral servitude.
The instrument provides in pertinent part as follows:
"WHEREAS, it is the intention of all the parties at interest that they shall continue their ownership in the said minerals.
NOW, THEREFORE, in consideration of the premises and the consideration hereinafter mentioned, the said Rufus A. Estes has acknowledged and by these presents does acknowledge that the said Wm. T. Burton, Chas. R. Houssiere and Terrell Woosley, Liquidating Trustees of the Calcasieu National Bank in Lake Charles, in Liquidation, are the owners of sixty per cent (60%) of one-half (½) interest in and to all of the oil, gas, and other minerals, and the Calcasieu Real Estate & Oil Co., Inc., is the owner of forty per cent (40%) one one-half (½) interest in and to all of the oil, gas, and other minerals located in, on, and under the following described property in Jefferson Davis Parish Louisiana, to wit: All of Section Twelve (12) and the East half (E1/2) of Section Eleven (11), Township Nine (9) South, Range Five (5) West, Louisiana Meridian, with full rights of entering upon said lands for the purpose of drilling, mining, extracting and/or removing said oil, gas, sulphur and other minerals from said lands.
It is distinctly understood and agreed that henceforth the said Calcasieu National Bank in Lake Charles in Liquidation, and the Calcasieu Real Estate & Oil Co., Inc., are the owners of an undivided one-half (½) of the whole of all of the oil, gas, and other minerals located in, on, and under the above described land, in the proportion of sixty per cent (60%) to the Calcasieu National Bank in Lake Charles, in Liquidation, and forty per cent (40%) to the Calcasieu Real Estate & Oil Co., Inc.
The consideration for which this acknowledgment and conveyance is made is the sum of Two Hundred Fifty and NO/100 ($250.00) Dollars cash, receipt of which is hereby acknowledged, and full acquittance and discharge granted therefor." (Emphasis supplied)

CONCLUSION
"The parties have stipulated that bonuses, rentals and royalties realized from the *346 leases on the property and from production on the property have been paid to and received by plaintiff and plaintiff's ancestors in title and by defendant and defendants' ancestors in title in the proportions of 50% to plaintiff and 50% to defendant. Up until the filing of the instant suit, all parties in the chain of title have considered that defendant holds a one-half (½) mineral servitude on the property.
"For the above reasons the Court concludes that prescription has been interrupted on the mineral servitude and defendants are the present owners of the mineral servitude which is valid and outstanding at the present time."
For the reasons assigned by the district court, the judgment is affirmed.
AFFIRMED.
NOTES
[*] Judge Robert P. Jackson of the Ninth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.