SCHOTT, Chief Judge.
This is an action for a permanent injunction against defendants’ interference with plaintiffs’ alleged right to the use of an alley behind their property. After trial on the merits the trial court dismissed the suit on an exception of prescription and plaintiffs have appealed.
Plaintiffs own the property at 1545 Magazine Street on the corner of Orange Street. Along the rear of their property is an alley which runs through the square from Orange Street to Felicity Street. Defendant’s property at 1125 Felicity Street is contiguous to the alley. Defendants constructed a metal gate across the alley on a line extending from the rear line of their property. Plaintiffs filed suit for a permanent injunction to prevent defendants from obstructing the alley and to compel the removal of the gate. There is a ten foot brick wall along the rear of plaintiffs’ property with no gate to provide access to the alley. This has been the situation for fifty years. On this basis the trial court applied the ten year prescription for nonuse.
Plaintiffs first contend that the alley was dedicated to the use of the | gpublic and the public’s right to use it cannot be lost by prescription. They argue that the intention to dedicate the alley as public is shown on the 1846 plan of survey which shows the alley with the inscription: “Alley of 12 feet in width common to all of the Lots fronting....”
The trial judge concluded that this language “contradicts any notion of public use”, but plaintiffs rely on City of Covington v. Glockner, 486 So.2d 837 (La.App. 1st Cir. 1986), writ denied 488 So.2d 693 (La.1986) and Ross v. City of Covington, 271 So.2d 618 (La.App. 1st Cir.1972), writ denied 273 So.2d 844 (La.1973) to support the opposite conclusion.
These cases involved “ox lots” in the City of Covington which were parcels measuring 120' x 120' on the inside of a number of squares connected to the outside of the squares by alleys. This group of squares would become the central part of the City of Covington. The plan was recorded in the conveyance records in 1814 by John Wharton Collins with the following provision:
"... thereby reserving in the purchasers of Lots, the rights in common of all Streets, Alleys, Water Courses and Timber, Trees, that are within the plan ...”
The court concluded that the ox lots belonged to the public based upon later maps and surveys which indicated continuous location of the ox lots, testimony of witness as to the use of the lots by the general public, the fact that title warranty was never extended to purchasers of the ox lots, and the fact that the ox lot was not peculiar to one square but was part of a common design in the scheme of the subdivision.
In the Ross case the court held that the intention to dedicate public streets or alleys must be clearly established by the evidence. 271 So.2d at 620. There the court of appeal affirmed the trial court’s conclusion that the evidentiary burden of proof was met. In the present case there is no evidence of any intention on the part of the 1846 developers to dedicate this alley to the public or to contradict the plain meaning of their language that the alley was only for the common benefit of the owners of lots fronting on Magazine Street.
Although Pioneer Production Corp. v. Segraves, 340 So.2d 270 (La.1976), cited by the trial judge, dealt with the dedication of a subdivision pursuant to LSA-R.S. 33:5051 the following language at page 275 is pertinent:
A statutory dedication is properly to be gleaned from the instrument, or instruments, of record, rather than from evidence or purported intention dehors the record. On the other hand what is of record must be given a rational construction in ascertaining the purport of the in *1271 strument. When that rational construction negates an intent on the part of the subdividing landowner to dedicate a particular piece of land, the fact that a reference to the land appears on a map does not, of itself, effect a dedication to public use.
Neither the language on the 1846 plan of survey nor the evidence of record supports the conclusion that this alley is a public alley. Consequently, the judgment of the trial court on this issue is correct. However, we do not find support for the trial court’s application to the facts of this case the law on predial servitudes found in Title IV of Book II of the Louisiana Civil Code.
A reading of C.C. arts. 646 et seq. compels the conclusion that this body of law applies to properties or estates which are adjacent to each other with the one dominant estate having a charge or a burden of some kind on the other. Art. 646. A servitude of passage is designed to provide an estate which has no access to a public road with such access. Art. 689. The servitude of passage is the right for the benefit of the dominant estate ... to pass through the servient estate. Art. 705. The ten year prescription for nonuse of a predial servitude is established by art. 753. Prescription of nonuse is a mode of extinction of a real right other than ownership as a result of failure to exercise the right for a period of time. C.C. art. 3448. Comment (e) to this article distinguishes the prescription of nonuse from liberative prescription in that the former extinguishes the right itself while the latter bars actions.
In the present case, the properties of the parties are not contiguous. The property at issue, i.e., the alley, is not owned by either party. The concept that plaintiffs right to use this alley was the equivalent of a servitude over defendant’s property simply does not fit the facts of this case because defendant does not own the property which is supposedly burdened by plaintiffs right of passage. This is not the situation where defendant was the owner of a servient estate burdened with a servitude in favor of a dominant estate belonging to plaintiff. It is the situation where an alley is adjacent to properties fronting on Magazine Street and to the side line of defendant’s property; it is not owned by any of the owners of these properties; but it is dedicated to the common use of them all.
If the alley is not a public alley and if it cannot be identified with the law of predial servitudes what is it? In Bradbury v. Paul, 365 So.2d 845 (La.App. 4th Cir.1978), we grappled with this very question. In that case we considered the situation where two properties were divided by a common alley; and plaintiff sought to enjoin defendant from obstructing his use of the alley. As in the present case the trial court dismissed the suit holding that plaintiff had a predial servitude of passage which he lost by the ten year prescription of nonuse. In reversing the trial court we observed:
IsSince there is nothing in the record to suggest that defendant ever acquired the alley behind his lots by title or by acquisitive prescription, the nonuse by plaintiff of the alley would not operate as a loss of a servitude of passage in defendant’s favor. At best, it might release the alley from a servitude in favor of the owner of the alley. Whether the owner be Bonnabel’s heirs or assigns or the public is not shown in the record.
We suggested in that case that the alley in question if not public may be owned by the heirs of the original developer of the square. It may be that the alley in the present case is owned by the heirs of the original developer. It is interesting to note on page 54 of the transcript the trial judge noted that the alley could be owned by the original developer. In any event we have concluded that this alley is not a public alley but is for the common benefit of the abutting owners who may use it in a variety of ways.
At the trial of this case the parties were preoccupied with the use of this alley as a driveway for vehicles. Common use connotes a broader meaning. For example, the definition of the servitude of passage is the right for the benefit of the dominant estate whereby persons, animals or vehicles are permitted to pass through the servient estate. C.C. art. 705. In effect these abutting owners have the right to use this alley in any lawful manner without depriving one another of the same right. One of these rights is to *1272 pass from Orange Street to Felicity Street without obstruction. The fact that plaintiffs do not and cannot enter the alley through a gate in the fence does not deprive them of the right to use the alley otherwise. The entrance to the alley on the Orange Street side of the square is but a few steps from a gate to plaintiffs property on Orange Street.
We sympathize with the plight of defendants who spent considerable sums renovating their property and who erected the gate across the alley ^because of genuine and reasonable concerns about the security of their property. Their testimony that this alley is frequented by derelicts, drug pushers and users, fugitives from the police, and perverts strongly supports their action and argues persuasively for an affirmation of the judgment of the trial court. But we do not find support for their action in the law, and where the law of immovable property is concerned equitable considerations do not ordinarily prevail. The maxim “Hard eases make bad law” applies here. This is not a public alley but is common only to the abutting owners who together may take action to provide for the security of the alley. It seems clear that they should do so, but one alone cannot take charge of the alley.
Accordingly, the judgment of the trial . court is reversed and set aside and there is judgment in favor of plaintiffs granting a permanent injunction against defendants ordering them to remove the gate they erected across the common alley adjacent to their property.
The case is remanded to the trial court for the issuance of a "writ of injunction and for enforcement thereof.
All costs of these proceedings are assessed against defendants.

REVERSED AND REMANDED.