| ¶ KIRBY, Judge.
This is an action for a permanent injunction against defendant’s interference with the plaintiffs alleged right to use an alley that was designated as separate from the other three lots in the act of subdivision. Plaintiffs appeal the judgment of the trial court that granted defendant the right to use the alley. On appeal we find that the trial court erred in not giving meaning to the term common alley found in the act of subdivision of the property. Therefore, we reverse.

STATEMENT OF THE FACTS

Three properties in a subdivision abut a common alley. In 1999 one of the three property owners unilaterally claimed the common alley as her own, and obstructed *353 her neighbors’ use of the alley. Her actions triggered the other property owners to bring this lawsuit.
The parties to the suit are the current owners of three lots, located on the corner of Pleasant and Prytania Streets in New Orleans’ Garden District. Robin and Terrence Blanchard (the Blanchards) have co-owned 3225 Prytania Street |2(Lot A) since 1995, and Robert Martinez (Martinez) has owned 1521 Pleasant Street (Lot C) since 1990. The defendant, Heydie K. Sciacca (Sciacca), purchased 3219-21 Prytania Street (Lot B), a four-plex apartment property in 1996. An alley separates the Blanchards’ and Martinez’s properties (between Lot A and Lot C). The alley begins at Pleasant Street and travels the length of Lot A and a portion of Lot C, and ends at the rear of Lot B. The alley is designated as a common alley in the original 1886 subdivision documents, and in each neighbor’s chain of title.
Beginning in 1996, Sciacca (Lot B) began erecting gates and fences enclosing the alley and limiting her neighbors’ access. In 1999, after a dispute between the owners, Sciacca completely fenced off the alley, making it inaccessible to the Blanch-ards (Lot A) and Martinez (Lot C). Sciac-ca also parked her cars in the alley, without her neighbors’ permission, obstructing their use of the property. Sciacca also took other actions in violation of the neighbors’ property rights, all of which are the subject of this lawsuit.

THE ORIGINAL SUBDIVISION AND CREATION OF THE COMMON ALLEY

In May 1886 Crescent Insurance Company (Crescent), the original owner of the undivided parcel, subdivided the parcel into three lots [1]. The Crescent corporate resolution provided in part:
|sThat the portion of ground belonging to this Company, situated and forming the corner of Prytania & Pleasant Streets, in the .... [illegible] .... bounded by Prytania, Pleasant[,] St. Charles and Harmony Streets, be subdivided into three portions of ground, one, there forming the corner of Prytania and Pleasant Streets, and measuring 60 feet front on Prytania Street by 144 feet in depth and front on Pleasant Street [Lot A], with an alley in its rear ten feet and opening on Pleasant Street, common to it and the other portions of ground; another measuring 60 feet front on Prytania Street by 144 in depth, with the use of the aforesaid alley [Lot B]; and another measuring 60 feet front on Pleasant Street by 120 in depth, with the use of said alley.
Crescent’s surveyor, J.F. Braun, confirmed this plan of subdivision in his May 25, 1886, survey (hereinafter the Braun Survey), which depicted all of Lots A, B, and C. In June and July 1886 Crescent sold the three subdivided lots of the parcel, designating as Lots A, B, and C. Crescent did not sell a fourth lot measuring 10 by 60 feet, but designated this lot as a common alley for the benefit of the owners of Lots A, B, and C, whose properties abutted the alley.
Crescent initially sold the subdivided lots via the following acts:
Lot A to Eureka Homestead Society, on July 15,1886: the legal description provided that Lot A is bounded in the rear by an alley ten feet wide, opening on Pleasant Street and common to said lot and others....
Lot B to James Anderson, on June 5, 1886: the legal description provided that the lot was being sold ... .with the use of an alley, ten feet wide, opening on Pleas *354 ant Street, common to the said lot and others delineated on said [Braun Survey] sketch....
Lot C to John W. Kearney, June 5,1886, also describing the alley as common to Lot
C.

\tTHE LOTS’ CHAINS OF TITLE

Numerous subsequent acts of sale and surveys of the three lots contained language consistent with the original descriptions. Lot B (currently owned by Sciacca). includes several transactions where Sciac-ca’s predecessors-in-title acknowledged the equivalent servitude rights of Lots A and C to the common alley. These public record acknowledgments included transactions occurring in 1960 and 1986. Even when Sciacca purchased Lot B in 1996, the deed of sale referred to the Braun Survey depicting Lots A, B, and C, and described the alley as common to it and others, delineated on said sketch.
Also in Lot B’s chain of title is the 1960 affidavit of Sciacca’s predecessor-in-title, Charles Heuer Succession representative Francis P. Burns. To facilitate the 1960 auction sale of Lot B, Burns gave an affidavit (the Burns affidavit) and stated:
That, commencing with said act of sale, on June 6, 1886, the right to use said common alley by lots ABC has continued uninterruptedly up to the present date.

LOT OWNERS’ USE OF THE ALLEY

There is proof in the record that the three lot owners made use of the alley up to the date of the 1960 Burns’ Affidavit, and afterwards, even though it appears that the majority of the use was by the owners of Lot B.
The house on Lot C sits very close to the alley and has an entryway within three feet of the alley boundary. Mildred Baldwin, the daughter of prior Lot C owner Mildred Lemann, submitted two affidavits. One prompted by the defense attorneys, and the latter by plaintiffs’ attorneys. Naturally, the result was two conflicting affidavits. The first was drafted by the defense attorneys and stated that [ B“no use whatsoever was made of the alley.” The second, and latter affidavit, stated that Ms. Lemann received deliveries at the alley side door during the time that she lived there. Mr. Martinez (who purchased Lot C from Lemann’s Estate) gave testimony that, from that time until Sciacca closed off the alley in late 1999, he made regular and unchallenged use of the common alleyway.
Likewise, there was testimony that Robin and Terence Blanchard (Lot A), as well as their predecessors-in-title, maintained their fence and property. In the record there is also deposition testimony that Lot A’s owners placed a pool drainage pipe under the alley.
It is not contested that Ms. Sciacca has a right to use the alley. In fact she and her predecessors in title have made numerous uses of the alley. Although Ms. Sciacca may have used the alley to park her car, the alley does not provide her a right of passage pursuant to La. Civ.Code art. 689,[2] because her property is not enclosed within the meaning of that article since she has access from Prytania Street.
Beginning soon after Ms. Sciacca purchased Lot B in March 1996, she began enclosing the common alley to restrict access by her neighbors, the Blanchards and Martinez.
*355 In late 1996, Ms. Sciacca installed an iron electrical gate partially enclosing the alley’s main Pleasant Street opening, ostensibly for security. Martinez later purchased a remote opening device, that worked only temporarily on this gate, so as to gain access to the alley. In 1998 Ms. Sciacca constructed a fixed iron fence completely closing off the alley from Pleasant Street.
Un the fall of 1999, Sciacca erected a canopy over.a portion of the common alley and nearly one foot over onto Martinez’s own lot. In the process Sciacca unilaterally determined that the alley would serve as her carport.
In late 1999, after the City of New Orleans ordered Sciacca to remove the canopy for violation of Municipal Code ordinances, Sciacca constructed a wood fence several inches onto Martinez’s property, completely sealing off the alleyway from Lot C (Martinez). Without notice, Sciacca also changed the access code information to access the electronic gate, making it impossible for Martinez or the Blanchards to access the alley at all.
The City also cited Sciacca for construction of a shed directly on her common boundary line with the Blanchards without a one hour fire rated wall and without the proper setbacks in violation of the Comprehensive Zoning Law of the City of New Orleans, Section 15.5.7.B and Table 600.
In 2000, after Sciacca closed off the alley, Martinez and the Blanchards demanded that Sciacca either remove all obstructions or provide her neighbors with full access to the common alley. They also demanded that Sciacca cease parking her ears in the alley and remove the offending shed. When Sciacca refused her neighbors’ demands, the Blanchards and Martinez brought this suit for preliminary and permanent injunctive relief in Orleans Parish Civil District Court. The suit sought a declaratory judgment and damages for trespass and for Sciacca’s violations of municipal ordinances.
On June 22, 2000, the trial court entered a temporary restraining order prohibiting Sciacca from asserting sole possession of the ‘alleyway’ fronting Pleasant Street. .... Sciacca filed a reconventional demand, seeking dissolution of the TRO and a judgment declaring that the Blanchards and Martinez have no rights |7to the common alley. Sciacca specifically alleged 10 years non-use prescription under La. Civ. C. art. 753. Sciacca later raised as a defense to the plaintiffs’ claims that the original subdivision did not convey a servitude favoring Lots A (Blanchards) and C (Martinez), but only in favor of Lot B, her own.
With the parties’ consent, the trial court merged all demands and claims and held a two-day trial on the merits on October 27 and December 7, 2000.
On February 26, 2001, the trial court entered a judgment denying the Blanch-ards’ and Martinez’ injunction application. The court ruled in Sciacca’s favor, allowing her to maintain the fences and the gate that enclosed the alley. The trial court accepted Sciacca’s position that the original subdivision and sale transactions that established Lots A, B, and C did not establish servitude rights inuring to Lots A and C. The trial court relied on the fact that the notaries that passed the original 1886 sales of Lots A and C did not include the specific phrase right to use in the property descriptions, while the Lot B sale language did include the phrase.

STATEMENT OF THE LAW

The trial court based its judgment on its interpretation of title documents, in which it completely disregarded the phrase a common alley and over emphasized the phrase right to use. This constitutes a legal finding. As such, the proper stan *356 dard of review for such legal findings is de novo. Landry v. Landry, 97-1839 (La.App. 4 Cir. 11/25/98), 724 So.2d 271, 274.

J£HE COMMON ALLEY

In Wetzel v. Khan, 2000-1083, p. 3-4 (La.App. 4 Cir. 9/19/2001), 797 So.2d 122, 125, we defined the legal term of art common alley as follows:
A “common alley” represents a servitude of passage that encumbers a passageway on one piece of property in favor of neighboring property. Louisiana jurisprudence has recognized the right of use of a common alley or use of a common.way as granting a servitude that gives the neighbor the right to pass over the alley for purposes of ingress to and egress from his property. Whitney Nat. Bank of New Orleans v. Poydras Center Associates, 487 So.2d 120 (La.App. 4 Cir.1986).
We also stated:
Discontinuous servitudes such as the servitude of use of an alley must be created by title under the Louisiana Civil Code of 1870. McCann v. Normand, 97-103 (La.App. 3 Cir. 6/4/97), 696 So.2d 203. A conventional servitude established by title is governed principally by the intention of the parties. LSA C.C. art. 709; McGuire v. Central La. Elec. Co., Inc., 337 So.2d 1070 (La.1976). If the title is silent to the extent and manner of use of a servitude, the intention of the parties is to be determined in fight of the purpose of the servitude. Tournillon v. Sewerage and Water Bd. of New Orleans, 96-1457 (La.App. 4 Cir. 2/12/97), 689 So.2d 655, writ denied, 97-0662 (La.4/25/97), 692 So.2d 1091. Title is not necessarily limited to the deed conveying the land. McGuffy v. Weil, 240 La. 758, 765, 125 So.2d 154, 157 (1960). No orthodox form is necessary to establish a servitude; it is only necessary that parties make clear their intention in the instrument to establish one. Noel Estate v. Kansas City Southern & Gulf Ry. Co., 187 La. 717, 175 So. 468 (1937).
Wetzel, supra, p. 5, 126.
However, a more analogous case to the present one is Boese v. Casey, 93-2128 (La.App. 4 Cir. 5/26/94), 637 So.2d 1269. In Boese, we did not apply the law on predial servitudes because neither party had ownership of the common alley, the properties simply abutted the alley. Here we find this to be the case as well. No | nwhere in the record does any party have a claim by. title to this alley, other than Crescent.
The act which created the common alley was an act of subdivision by the sole corporate owner, Crescent. This act of subdivision, as well as the accompanying chains of title, creates and governs Lots A, B, C, and the common alley. As this juridical act governs the boundaries of said properties, it must be interpreted so as to give meaning to all the words that appear. La.C.C. art. 11. In Kalmn, Inc. v. Walker Louisiana Properties, 488 So.2d 340 (La.App. 3rd Cir.1986), at page 343, our brethren state:
“Courts are bound to give legal effect to all contracts according to the true intent of the parties to be determined by the words of the contract. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the party’s intent. La.C.C., Article 2046 (former Article 1945); Rebstock v. Birthright Oil and Gas Company, 406 So.2d 636 ([La.App. 1 Cir.1981], writ denied) 407 So.2d 742 (La.1981). All clauses of agreements are interpreted one by the other to give each the sense that results from the entire act. La.C.C. Article 2050 (former Article *357 1955); Pendleton v. Shell Oil Company, 408 So.2d 1341 (La.1982). The aim of the interpretation is to discern a compatible meaning to all provisions of an agreement. Farrell v. Hodges Stockyards[Stock Yards], Inc., 343 So.2d 1364 (La.1977). The Court will avoid neutralizing any provisions; if possible, practical effect will be given to all its parts according to each the sense that results from the entire agreement Lambert v. Maryland Casualty Company, 418 So.2d 553 (La.1982).
Defendant would have us believe that the phrase common and common alley are nothing more than decorative ornaments within the creation of the subdivision. Defendant’s argument, and interpretation of the act, necessarily disregards the term common as though it were not present. As stated in Kalmn, supra, and La. Civil Code article 11, the judiciary is not at liberty to completely |indisregard words within a contract, when meaning can be given to the word without nullifying other provisions. Because the trial court did so, it committed legal error.
The etymology of the word in question, common, is highly relevant and defines its meaning. The prefix com in Latin means with, and the root word muni in Latin means city or municipality in English. Therefore, it is clear the definition of the word common implies belonging or pertaining to the community at large or public.[3] Clearly, the insertion of such a word in this act governing the property, and its modification of the term alley, must be given meaning. And that meaning can be none other than that the alley referred to in the original subdivision, and in subsequent acts, was meant to belong or pertain to the owners of Lots A, B, and C. Moreover, the term Crescent utilized to describe the ten (10) by sixty (60) foot plot — ■ “common alley” — is a legal term of art. The term common is defined in BLACK’S LAW DICTIONARY (Ninth ed.1999), at 267, as connoting a legal right to use another’s property, such as an easement.
The intent of Crescent to set the alley apart as common to the owners of Lots A, B, and C in the original subdivision cannot be doubted, because the alley’s dimensions are stated separate and apart from the dimensions of Lots A, B, or C, within the context of the original undivided piece of land in the Corporate Resolution dated March 29, 1886. Had Crescent wanted to give the alley to just one lot owner it would have included the ten (10) feet by sixty (60) feet parcel of land within the title of one of the lots, as opposed to separately mentioning this parcel of land as distinct from the dimensions of Lots A, B, and C.

PRESCRIPTION OF NON USE

The defendant argues alternatively that the Blanchards and Martinez’s predial servitude was extinguished by non-use for ten (10) years. La. Civ.Code art. 753.[4] The trial court did not base its judgment on this argument. In examining the record we are at a loss as to when this prescription began to toll. There is a lack of evidence going back beyond 40 years[5], and insofar as the immediate predecessors-in-title were concerned there is conflicting testimony.
*358 Boese v. Casey, 637 So.2d 1269, 1272 (La.App. 4 Cir. 5/26/94) nullifies defendant’s argument that the fence separating Lot A from the common alley automatically extinguishes their rights. Moreover the Blanchards, Lot A’s owners, testified they used the alley to maintain their fence, as well as a pool drainage pipe under the alley.
Mr. Martinez, owner of Lot C, testified at trial that until Sciacca closed off the alley in late 1999, he made regular and unchallenged use of the common alleyway.
There is not a preponderance of evidence in the record to prove that prescription of non-use for ten years ever occurred or even at what point it would have.
For the aforementioned reasons, we reverse and grant the permanent injunction prohibiting defendant from impeding her neighbors access to the common alley.
REVERSED.

. See Depiction of City Block Platt at the end of the opinion.

. See La. Civil Code art. 689, enclosed estate; right of passage; The owner of an estate that has no access to a public road may claim a right of passage over neighboring property to the nearest public road. He is bound to indemnify his neighbor for the damage he may occasion.

. Webster’s New Collegiate Dictionary, G & C Merriam Co., Publishers, (Springfield, Mass., U.S.A.)

. This provision reproduced the substance of Article 789 of the Louisiana Civil Code of 1870, which was in effect at the time of the 1886 subdivision.

.Except for the Bums’ Affidavit, which states that the alley was used in common.