323 So.2d 247 (1975)
Walton J. BARNES
v.
DIXIE ELECTRIC MEMBERSHIP CORPORATION et al.
No. 10482.
Court of Appeal of Louisiana, First Circuit.
November 24, 1975.
*248 John Schwab and Richard M. Sandefer, Baton Rouge, for appellant.
Stephen P. Dart, St. Francisville, for appellees.
Before ELLIS, BLANCHE, and LOTTINGER, JJ.
LOTTINGER, Judge.
This case involves the damage to a number of trees belonging to plaintiff, Walton J. Barnes, by defendant-appellants, Dixie Electric Membership Corporation and Chem-Weed, Inc., on real property belonging to Barnes in West Feliciana Parish. Dixie, through its agent, Chem-Weed, by use of helicopter sprayed a path under and adjacent to an electric line owned by Dixie and situated on the property of plaintiff with a chemical for the purpose of killing trees and shrubs in order to prevent them from growing into the electric lines of Dixie. Judgment was rendered in favor of plaintiff, Walton J. Barnes, in the sum of $2,930.00, plus costs, and $110.00 for expert witness fees in connection with the testimony of Mr. Andrew J. Hart. The defendants have suspensively appealed from this judgment of the Lower Court. Plaintiff has answered defendants' appeal and seeks an increase of the award in his favor.
The issues presented are whether the defendants had a servitude across the property *249 of plaintiff; if so, what were the limits of this servitude, and were such limits exceeded by defendants.
The record contains no reasons for judgment, so we do not know the basis of the judgment of the Lower Court. In light of LSA-R.S. 12:428, we assume that the Lower Court found that the defendants did have a servitude to operate and maintain the electric transmission line in question. LSA-R.S. 12:428 provides:
"A cooperative shall acquire a servitude on an immovable, unless such immovable is owned by the federal or state government or any agency or subdivision thereof, for the operation and maintenance of its electric transmission and distribution lines, along, upon, under or across any such immovable by virtue of the uninterrupted maintenance of such lines without the written or other consent of the owner thereof, along, upon, under or across the immovable for a period of one year; provided such servitude and operation does not interfere with the use of said property by other public utilities; provided further that in all cases where the written consent of the owner for the establishment of a servitude has been obtained and a line has been constructed along, upon, under or across the property under said consent it is not necessary that the written consent be recorded in the conveyance or other records of the parish where the property is located in order to make the servitude effective as to third parties."
It was uncontradicted at the trial of this matter that the lines in question had been in existence in excess of one year, and in fact had been in existence for more than a year before plaintiff purchased the property.
Plaintiff raises for the first time in these proceedings the constitutionality of LSA-R.S. 12:428, in that it violates Article 5 of and the 14th Amendment to the United States Constitution, Article 1, Section 2, and Article 4, Section 15 of the Louisiana Constitution of 1921, and Article 1, Sections 2 and 4 of the Louisiana Constitution of 1974, inasmuch as these provide the "due process" limitations on the power of government which assures that no person shall be deprived of property without "due process of law," and then, only for public purposes and only after just compensation has been tendered.
The Supreme Court of this state in Summerell v. Phillips, 258 La. 587, 247 So.2d 542, 546 (1971) stated:
"Although several exceptions have been recognized, [footnote omitted] the general rule prevails that a litigant cannot raise the unconstitutionality of a statute or ordinance unless its unconstitutionality is specially pleaded and the grounds particularized. [citation of cases omitted].

* * * * * *
"As a corollary of the above rule, it is also well accepted that a litigant who fails to plead the unconstitutionality of a statute cannot legally raise the constitutional issue in the appellate court."
Since we have decided that we cannot consider the question of the constitutionality of the statute, and have agreed with the Trial Judge in his appraisal that a servitude does exist, the question before the court is the rights of the servitude owner, and the extent of those rights in the maintenance and preservation of the servitude. The limits of the servitude in question and the rights of the servitude owner must necessarily revolve around what is reasonable and necessary from the point of view of both parties. While LSA-R.S. 12:428 sets no width for such a servitude, the Trial Judge apparently found twenty feet to be a reasonable width because it appears that the award to plaintiff was for damages outside of a twenty foot width based on the value testified to by *250 plaintiff's witness and not contradicted by defendants. There must be a balancing between what is necessary in order for the servitude owner to use his servitude and what the landowner must suffer as a result of the servitude. What is reasonable must be determined upon each particular set of facts. In Sticker v. Southern Bell Telephone and Telegraph Company, 101 So.2d 476 (La.App. 1st Cir. 1958) this court held that in the case of a pole without a crossbar carrying a single line, it was reasonable to clear an area twelve feet in width or six feet on each side of the line. The case before us involves a single pole with a six foot crossbar near the top connected to the pole in the center so that three feet of the crossbar extend to each side of the pole, and one line is strung on each end of the crossbar. Therefore, in the case before us a twenty foot servitude allows just one foot more clearance than was allowed in the Sticker case in that here there would be a seven foot clearance from each of the two lines. We find no error in the determination by the Trial Judge that twenty feet was a reasonable width for the servitude in question.
The electric lines in question passed through property on which plaintiff planned to make his home site and one of his considerations in purchasing said property was the trees located thereon. The property was the site of Greenwood Plantation, the old home site of which is located in an Oak park with approximately 100 oak trees dating back to 1830 and layed out in a square pattern directly in front of the old home site. With this setting in mind, we find that the Trial Judge had more than ample basis for determining that the defendants exceeded the limits and rights of their servitude by the spraying of chemicals in certain areas for a width in excess of twenty feet. On the other hand, we do not find that the Trial Judge abused the great discretion he has in fixing damages outside of the twenty feet width, and therefore, we will not increase the quantum awarded plaintiff.
For the above and foregoing reasons the judgment of the Lower Court is affirmed at the defendant's costs.
Affirmed.