GONZALES, Judge.
This suit involves a claim for property damages by Mr. and Mrs. Joseph Weigand arising out of the cutting of fourteen cypress trees by Defendant, Asplundh Tree Experts (“Asplundh”), without the plaintiffs’ permission. The named defendants were Asplundh and Louisiana Power and Light Company (“LP & L”). The trial court rendered judgment in favor of the plaintiffs for damages to the trees and surrounding grounds. LP & L and. As-plundh appeal urging the following assignments of error:
*126 1. The trial court erred in holding that Louisiana jurisprudence imposes a duty on the owner of a powerline servitude to obtain a landowner’s permission for maintenance of the servitude and that a breach of this alleged duty is negligence.
2. The trial court erred in awarding damages to the plaintiffs in the absence of a finding that defendants trimmed the trees negligently or exceeded the scope of their servitude by removing more of the trees than necessary to maintain their servitude.
Plaintiffs filed an answer to the appeal claiming:
1. The district court was correct in its ruling on liability.
2. The district court erred in not awarding an adequate amount of damages based on the expert testimony as to the value of the trees and appellees seek an increase in damages.[2]
3. The district court erred in failing to award treble damages pursuant to the Louisiana Revised Statutes and appellees seek treble damages.
In August of 1983, Asplundh, under contract with LP & L, trimmed some trees which had grown into the power lines of LP & L. The utility poles supporting the power lines were located in the Terrebonne Parish right-of-way along St. George Road and were at least five feet outside of what was referred to at trial as the south-east boundary of plaintiffs’ property, St. George Plantation. In the course of this work, Asplundh’s crew trimmed approximately fourteen cypress trees which were allegedly located on St. George Plantation. The trees were cut about six feet below LP & L’s primary power line; the top one-third, approximately six to fourteen feet, of each tree was removed.
At trial, defendants did not dispute that Asplundh’s crew had cut the trees, however, they advanced various arguments disputing that the cutting of the trees gave rise to any liability to the plaintiffs. The asserted defense which is pertinent to this appeal is that LP & L had a servitude over that portion of St. George Plantation on which the trees were located and as the owner of such a servitude LP & L did not need the landowner’s permission to maintain it.
The trial court made the following findings:
The Plaintiffs ... contend that LP & L had no servitude and therefore could not cut the trees with out [sic] permission of the owners, Mr. and Mrs. Weigand. Defendants contend that LP & L acquired a servitude and had a right to cut these trees to protect their servitude.
This Court finds that LP & L did acquire a servitude by virtue of the St. Julien Doctrine.
[[Image here]]
... LP & L had a servitude over the land on which their poles and wires cross does not preclude the Plaintiff’s [sic] from recovering property damages.
Whether the trial court found a servitude in favor of LP & L over plaintiffs’ land upon which the trees in question grew or over the land upon which the utility poles and wires crossed (outside of plaintiffs’ property) alone is unclear. However, after a thorough examination of the record and exhibits, we find a servitude existed in favor of LP & L over plaintiffs’ property, and based on the evidence presented, any other finding would be manifestly erroneous.
The Third Circuit explained the effects of the St. Julien doctrine in Rogers v. Louisiana Power & Light Co., Inc., 391 So.2d 30 (La.App. 3rd Cir.1980), as follows:[3]
Under this rule, established in St. Julien v. Morgan Louisiana & Texas Railroad Co., 35 La.Ann. 924 (1883), a public or quasi — public corporation having exprop-riatory powers can acquire a servitude over the land of another where the landowner consents or acquiesces in the con *127 struction of facilities for a public purpose. The landowner is precluded from reclaiming his property and is limited to an action for compensation for the value of the property taken and damages, both determined as of the date of the taking.
In Lake, Inc. v. LP & L, 330 So.2d 914 (La.1976), our Supreme Court, disenchanted with this extra-codal establishment of predial servitudes, overruled the St. Julien doctrine insofar as it applied to the acquisition of discontinuous servi-tudes. As in the present case, the Lake decision involved an electric transmission power line which, the Court stated is a discontinuous apparent servitude.
The district court, in its written opinion, held the St. Julien doctrine inapplicable to the facts of this case in light of the Lake decision. However, in Lake the Supreme Court expressly stated that its ruling was to be applied prospectively only, affecting conduct occurring after the finality of the Lake judgment. Here the transmission line was constructed in the early 1950s. Thus, the present case is clearly unaffected by the Lake decision. Plaintiffs’ claim must be decided under St. Julien.
We note that in 1976 the legislature enacted R.S. 19:14 (Act 504 of 1976) in response to the Lake decision. That statute provides in pertinent part:
‘In the case where any corporation referred to in Section 2 of this Title has actually, in good faith believing it had the authority to do so, taken possession of privately owned immovable property of another and constructed facilities upon, under or over such property with the consent or acquiescence of the owner of the property, it will be presumed that the owner of the property has waived his right to receive just compensation prior to the taking, and he shall be entitled only to bring an action for judicial determination of whether the taking was for a public and necessary purpose and for just compensation to be determined in accordance with Section 9 hereof, as of the time of the taking of the property, or right or interest therein, and such action shall proceed as nearly as may be as if the corporation had filed a petition for expropriation as provided for in Section 2.1 of this Title.
Added by Acts 1976, No. 504, § 1.’
Two court of appeal decisions and several legal scholars have expressed the opinion Act 504 of 1976 reinstates the St. Julien doctrine with slight variations. [391 So.2d at 33 (citations omitted)].
C.E. Brown, a retired LP & L supervisor of the area encompassing St. George Plantation, testified at trial that the power lines in question were placed along St. George Road in the 1950s. Thus, the St. Julien doctrine can be applied to the facts of this case. During the 1950s, St. George Plantation was owned by Charles Corbin. No testimony was presented to show that Mr. Corbin objected to the construction of the electrical lines. The testimony presented did reflect that electrical power supplied through the lines has been uninterrupted since 1950, minor power outages excepted. The right of LP & L to the servitude has been apparently unquestioned. In fact, the previous owner of St. George Plantation testified that he allowed LP & L to trim the trees extending into the power lines, noting that the power lines were in existence when he planted the trees. Where there has been consent or acquiescence of the owner at the time of construction, subsequent owners take the property subject to the servitude. Rogers v. Louisiana Power & Light Co., 391 So.2d at 34 [citing Webster Sand, Gravel & Construction Co. v. Vicksburg S. & P. Railway Co., 129 La. 1096, 57 So. 529 (1912)].
Having found that plaintiffs’ ancestor in title acquiesced to the power line construction, there remains to be determined only the extent of that servitude. The limits of a servitude for electric transmission lines and the rights of the servitude owner revolve around what is reasonable and necessary from the point of view of both parties. Barnes v. Dixie Electric Membership Corp., 323 So.2d 247 (La.App. 1st Cir.1975). There must be a balancing between what is necessary in order for the servitude owner to use his servitude and *128 what the landowner must suffer as a result of the servitude. 323 So.2d at 250. Reasonableness is determined upon each particular set of facts. Id. The Barnes court concluded that a twenty foot servitude (ten feet on either side of the pole) was reasonable in that case. In Sticker v. Southern Bell Telephone and Telegraph Co., 101 So.2d 476 (La.App. 1st Cir.1958), six feet on either side of telephone lines was found to be a reasonable servitude.
In order to determine what distance is reasonable in the case sub judice, we must first examine the location of the trees with reference to the power lines, plaintiffs’ property line and the existing highway servitude. Plaintiffs’ ancestor in title, Charles Corbin, acquired the land, consisting of 5.137 acres, by deed (introduced into evidence) dated September 11, 1945, indicating the property line extended to the centerline of the “project road” and was subject to the right-of-way for that road. The property was sold by the Corbin Estate to Charles Chauvin in 1962 and consisted of 4.758[4] acres bounded on the south by the “Public Project Road”, and 0.361 acres lying between Highway 24 and Bayou Terre-bonne. Made a part of the act of sale to Mr. Chauvin was the map prepared by William Clifford Smith (reproduced in Appendix “A”), incorporated by reference thereto. In 1982, Mr. Chauvin sold the property to plaintiffs. Plaintiffs’ deed, which also incorporated the 1961 Smith Survey, indicates that they purchased 4.785 acres[5], bounded on the south by the “Public Project Road”. The “project road” is shown on later maps to be St. George Road, along which the power lines and cypress trees in question stand.
The map of the 1961 survey prepared by William Clifford Smith, reproduced in Appendix “A”, shows plaintiffs’ property line along the St. George Road to be less than 34.33 feet from the centerline of the road. Although the 1961 survey map did not show the placement of the cypress trees, a map prepared by Charles McDonald in 1988, reproduced in Appendix “B”, based on the 1961 survey indicates some of the trees are on the property line and some are slightly inside the property line. However, neither of these maps reflect the extent of the servitude for St. George Road. Mr. Weigand testified that the title examination prepared on his behalf which was introduced into evidence reveals that the property is subject to: “all rights, ways and/or servitudes as depicted upon that plat showing property of the United States of America, in particular, the St. George, Isle of Cuba, Waubun Plantations, duly recorded in CB 184, folio 225, under Entry Numbers 105320, 105321, 105322. In particular the gravel road on the boundary of said subject property. [Sic.]” A certified copy of the 1945 plat was filed into evidence and showed an eighty foot right-of-way for St. George Road. The map also indicated the property line extended to the centerline of the road at that time.
Charles McDonald, the surveyor performing the 1988 survey, testified that the utility poles were located approximately five feet off of the property line. The map reproduced in Appendix “C”, of the 1984 survey prepared by Charles M. Camp, shows the position of the cypress trees to be approximately 0.1' to 1.8’ within the St. George Road servitude. Therefore, if LP & L were found to be entitled to a servitude for its lines co-extensive with that portion of the highway servitude affecting plaintiffs’ property, it would amount to some six to eleven feet of clearance on that side of its lines fronted by plaintiffs’ property. We believe that this is a reasonable *129 servitude allowance under the circumstances of this case.
Although the trial court correctly found a servitude in favor of LP & L, it went on to find LP & L was required to obtain permission from the landowner prior to cutting the trees; this was error. The trial court correctly sets out the holding of Fontenot v. Central Louisiana Electric Co., 147 So.2d 773 (La.App. 3rd Cir.1962), that an electric company is required to obtain permission before cutting trees on adjacent property with branches overhanging the property line. See also Harrison v. Louisiana Power and Light Co., 288 So.2d 37 (La.1973). However, the instant case is not governed by Fontenot because the trees in question herein are themselves (not merely the branches) within the servitude enjoyed by LP & L. In Fontenot, the offending trees were located on property adjacent to, but not subject to the servitude; only some of the branches of the trees extended into the right-of-way. The confusion arises in the present case because LP & L’s servitude encompasses a strip of plaintiffs’ property as well as adjacent property arguably[6] not owned by plaintiffs.
The test to be applied in cases such as this, where the trees or shrubbery interfering with a utility company’s enjoyment of its servitude are located within the right-of-way, is that announced by this court in Sticker v. Southern Bell Telephone and Telegraph Co., 101 So.2d at 477, and Stirling v. Dixie Electric Membership Corp., 344 So.2d 427 (La.App. 1st Cir.1977). Citing La. C.C. arts. 771 and 772,[7] the Sticker court held that where a servitude has been acquired, all the rights necessary to preserve or use the servitude pass with it. 101 So.2d at 477. The Sticker court further stated that in order to make use of the servitude granted to the telephone company therein, it was necessary to cut, or clear, the area under and within a reasonable distance of the telephone line. Id. In Stirling[8], the court held that when it becomes necessary, in maintaining electrical lines, to remove, cut or trim trees and shrubs, it must be done in a reasonable manner, with due regard to the rights of all parties.
Accordingly, damages for the cutting or trimming of trees growing in LP <& L's servitude should only have been awarded if performed in an unreasonable manner. Although the top one-third of each tree was removed, considering the close proximity to and extent of entanglement of limbs and branches with the power lines, we find the actions of defendants to be reasonable and consistent with their duty to prevent hazards to third persons. Consequently, damages awarded by the trial court were made in error and are hereby reversed. We find no merit in plaintiffs’ assignments of error.
*130 For the reasons assigned herein, the judgment of the trial court is reversed, and judgment is rendered in favor of LP & L and Asplundh and against the plaintiffs dismissing the plaintiffs’ petition with prejudice. All costs of these proceedings are to be borne by plaintiffs herein.
REVERSED AND RENDERED.
LANIER, J., concurs in the result.
*131 APPENDIX A
[[Image here]]
*132 APPENDIX B
[[Image here]]
*133 APPENDIX C
[[Image here]]

. This issue was not briefed, therefore it is considered abandoned under Rule 2-12.4, Uniform Rules-Court of Appeal.

. For a more detailed discussion of the effect of subsequent legislative enactments on the St. Ju-lien decision, see Cancienne v. Lafourche Parish Police Jury, 423 So.2d 662 (La.App. 1st Cir.1982).

. We note Charles Chauvin’s deed contains a discrepancy as to the amount of acreage purchased. The deed states two tracts were transferred containing 4.785 acres and 0.361 acres respectively, for a total of 5.119 acres. The deed also refers to the boundary lines as shown on the 1961 survey map by William Clifford Smith, reproduced in Appendix “A" herein. That survey map indicates the larger tract consists of 4.758 acres. Obviously a simple transposition occurred in the deed, which was carried forward into plaintiffs' deed, and shows a purchase of 4.785 acres.

. Plaintiffs did not purchase from Mr. Chauvin that portion of St. George Plantation lying between Highway 24 and Bayou Terrebonne, commonly known as the "batture." See Terrebonne v. Theriot, 140 So.2d 523 (La.App. 1st Cir.1962).

. We express no opinion herein as to whether plaintiffs’ title encompasses the land to the cen-terline of St. George Road or is limited by the 1961 survey, as it is unnecessary to a disposition of this tort action. See generally La.R.S. 9:2971; Ormond Country Club v. Dorvin Developments, Inc., 498 So.2d 144 (La.App. 5th Cir.1986); Crown-Zellerbach Corp. v. Heck, 407 So.2d 770 (La.App. 1st Cir.1981); Levraea v. Boudreaux, 259 So.2d 642 (La.App. 1st Cir. 1972). Clearly, plaintiffs own the land on which the trees grow. We refer to plaintiffs’ "property line” herein as shown on the Smith survey map (Appendix "A”) for the sake of convenience, since this survey was used as a reference point for the witnesses testifying in this matter. We note the testimony of William Clifford Smith that the 1961 survey map depicts that property outside of public use.

. The substance of former La.C.C. art. 771 was as follows:
When a servitude is established, everything which is necessary to use such servitude is supposed to be granted at the same time with the servitude.
The substance of former La.C.C. art. 772 was as follows:
He to whom a servitude is due, has a right to make all the works necessary to use and preserve same.
The substance of these articles was substantially reproduced in La.C.C. arts. 743 and 744 by La. Acts 1977, No. 514, § 1, eff. January 1, 1978.

.Although the Stirling case involved a conventional servitude, the utility company was granted the right under the servitude to cut and trim trees and shrubbery. We believe the rule expressed in Stirling regarding the exercise of that right is pertinent herein regardless of the source of the right and can be applied to cases such as the instant one where the utility company has acquired the right to cut and trim trees and shrubs growing in its servitude.