hBYRNES, Chief Judge.
Defendants, Dr. Harry F. Leveque, Jr., Nellie Leveque, (“the Leveques”) and Shahzad Khan (“Khan”) appeal a judgment, granting a preliminary injunction in favor of the plaintiffs, Cathey LaNasa Wetzel, Gloria LaNasa Raspanti, Marion A. LaNasa, Pauline Fransen Hardin and Celestine Publia (“the LaNasas”) and against the defendants, requiring the defendants to remove the gates blocking the alley between 1019 and 1021 Decatur Street. We affirm.
At the time of trial, the parties to the suit were the current owners of four lots on Decatur Street in the French Quarter. The LaNasas co-owned 1017-1019 Decatur Street since 1904, sometimes referred to as Lot No. 1 in Square No. 20 (“Lot 1”). In 1998 Khan purchased 1021 Decatur Street, sometimes referred to as Lot No. 2 in Square No. 20 (“Lot 2”). After renting the property for almost 23 years, the Le-veques bought 1025 and 1027 Decatur Street, sometimes referred to as Lots No. 3 and 4 in Square No. 20 (“Lots 3 and 4”), in 1999.
The property of the Leveques and Khan (between Lot 2 and Lot 3) is separated by an alley that begins at Decatur Street and travels the length of the lots, | abut widens toward the back to form the shape of a “T”, with the arms of the “T” located in the back of Lots 2 and 3. The arms of the “T” do not extend behind Lot 1 or Lot 4 *125 because the buildings on Lot 1 and Lot 4 extend to their respective property lines.
After Khan purchased Lot 2 in 1998, he demolished a wooden shed built by the previous lessee Joseph Valenti. The shed occupied the left arm of the “T” formed by the alley at the rear of Lot 2. In place of the shed, Khan erected a gate at the back of his property, closing off the left arm of the “T”. This prevented the LaNasas from entering the main portion of the alley from the rear of their property at 1019 Decatur. Khan and the Leveques also erected a gate at the front of the alley where it borders Decatur Street. This prevented the La-Nasas from gaining access to the alley from the front.
On March 4,1999, the LaNasas filed suit requesting injunctive relief to require the defendants to remove the gates based on the LaNasas’ claim that they had a servitude of use over the alley. The Leveques filed a reconventional demand, seeking a judgment declaring that they are the owners of the alleyway located on their property unburdened by any servitude or other interest in favor of the LaNasas as owners of Lot 1. The Leveques also filed a motion for summary judgment on the LaNasa’s claims and on their reconventional demand. Hearings were held on October 8, 1999 and October 11, 1999. On February 10, 2000, the trial court granted a preliminary injunction in favor of the LaNasas and against the defendants, the Leveques and Khan, requiring the removal of the gates in the alley. 1 /The trial court accepted the defendants’ assertion of their ownership of the alley property but held that the defendants’ ownership does not prohibit and cannot interfere with the LaNasas’ servitude of use. The defendants’ appeal followed.
On appeal, the defendants contend that the trial court erred in: (1) finding that the property owned by the defendants is burdened with a servitude of common use of the alley in favor of the property owned by the LaNasas; (2) issuing a preliminary injunction ordering the defendants to remove the gates in the alley.
The Leveques and Khan argue that no servitude was ever conveyed conventionally or acquired by prescription.
To obtain a preliminary injunction, the moving party must make a prima facie showing that he will prevail on the merits on the case. General Motors Acceptance Corp. v. Daniels, 377 So.2d 346 (La.1979). Doubt as to the existence of a predial servitude is resolved in favor of the servient estate. La. C.C. art. 730; King v. Strohe, 95-656 (La.App. 3 Cir. 5/8/96), 673 So.2d 1329. The proper standard of review is whether the trial court committed an error of law or made a factual finding which is manifestly erroneous or clearly wrong. Gibson v. State, 99-1730 (La.4/11/00), 758 So.2d 782. In a contract case, the trial court’s ruling on the intent of the parties is reviewed under a manifest error standard. Blanchard v. Pan-OK Production Co., Inc., 32-764 (La.App. 2 Cir. 4/5/00), 755 So.2d 376, writ denied, 2000-1297 (La.6/23/00), 765 So.2d 1043.
A “common alley” represents a servitude of passage that encumbers a passageway on one piece of property in favor of neighboring property. Louisiana ^jurisprudence has recognized the right of use of a common alley or use of a common way as granting a servitude that gives the neighbor the right to pass over the alley for purposes of ingress to and egress from his property. Whitney Nat. Bank of New Orleans v. Poydras Center Associates, 487 So.2d 120 (La.App. 4 Cir.1986), unit denied, 492 So.2d 1221 (La.1986).
A conventional predial servitude requires that the owner of the servient estate must grant a right in favor of the *126 owner of the dominant estate that must appear on the face of a written instrument. See Bart v. Wysocki, 558 So.2d 1326 (La.App. 4 Cir.1990). Defendants maintain that statements in acts recognizing or declaring the existence of a servitude or providing that property is subject to a servitude do not create a servitude or re-establish one that has been extinguished. Humphrey v. St. Louis, 492 So.2d 220 (La.App. 4 Cir.1986). Although La. C.C. 740 (effective in 1978) allows an apparent servitude to be established by title or by acquisitive prescription, that statute was not in effect at the time of the 1856 Act of Donation and Partition, and is not retroactive. Ryan v. Monet, 95-1332 (La.App. 4 Cir. 12/28/95), 666 So.2d 711.
Under La. Civil Code of 1870, La. C.C. art. 766 provided:
Continuous nonapparent servitudes, and discontinuous servitides, whether apparent or not, can be established only by a title.
Immemorial possession itself is not sufficient to acquire them.
Immemorial possession is that of which no man living has seen the beginning, and the existence of which he has learned from his elders.
| ¡^Discontinuous servitudes such as the servitude of use of an alley must be created by title under the Louisiana Civil Code of 1870. McCann v. Normand, 97-103 (La.App. 3 Cir. 6/4/97), 696 So.2d 203. A conventional servitude established by title is governed principally by the intention of the parties. LSA-C.C. art. 709; McGuire v. Central La. Elec. Co., Inc., 337 So.2d 1070 (La.1976). If the title is silent to the extent and manner of use of a servitude, the intention of the parties is to be determined in light of the purpose of the servitude. Tournillon v. Sewerage and Water Bd. of New Orleans, 96-1457 (La. App. 4 Cir. 2/12/97), 689 So.2d 655, writ denied, 97-0662 (La.4/25/97), 692 So.2d 1091. Title is not necessarily limited to the deed conveying the land. McGuffy v. Weil, 240 La. 758, 765, 125 So.2d 154, 157 (1960). No orthodox form is necessary to establish a servitude; it is only necessary that parties make clear their intention in the instrument to establish one. Noel Estate v. Kansas City Southern & Gulf Ry. Co., 187 La. 717, 175 So. 468 (1937).

1856 Act of Donation and Partition

The defendants maintain that the 1856 Act of Donation and Partition did not create the servitude of the use of the common alley.
In the present case Jean Roques and his wife became full owners of Lots 1, 2,3, 4 and 5 in 1838 when they entered into a partition with the Laurants to sever their co-ownership interests. After Mr. Roques died in January 7, 1855, an inventory was taken of his property in Orleans Parish in November 1855. A civil Engineer, C.A. de Armas, drew a plan dividing on paper the property into Lots 1-5. | fiThe de Armas plan did not mention a right of use of the alley by a servitude. The defendants note that the de Armas drawing cannot be found in the notarial archives, and the de Armas plan was not made operative by any act of the property owners or any court.
Roques’ widow and four children entered into an Act of Donation and Partition in Nantes, France, before M. Gautron, Notary in 1856. The Act conveyed all of the Roques’ property, including the lots now at issue, to the children in five separate parcels, with Mrs. Roques retaining a one-half usufruct over the property. Included in the Act was a portion entitled “Conditions.” Article 2 provided:
Each of the co-partitioners will support the servitudes of which the goods *127 composing his lot may be burdened, safe to defend and profit from those assets, such as they are, all at their own risk, peril and fortune and imthout recourse or recovery against the others. [Emphasis added.]
This provision applies to all the Roques’ property, including the Decatur Street lots. In 1856, the buildings on Lots 1 and 4 covered the entire lots, as they do today. Buildings on Lots 2 and 3 cover all the property outside of the alley on the ground floor. Access to the rear buildings on Lots 1, 2, 3, and 4 or to any portion of the carriage house and stables on Lot 5 could only be reached through the alley. Reasonably, the five lots of Decatur property would be subject to access by the owners and their tenants to the back of the property through the use of the alley. The configuration of the buildings support the servitude of use of the common alley. The Act clearly notes the servitude of which the lots may be burdened without recourse against the others. The length and width of the alley |7were readily ascertainable as were the length and width of the paved driveway in Burgas v. Stoutz, 174 La. 586, 141 So. 67, 69 (La.1932).

Rochereau 1885 Act of Deposit

The defendants contend that the Act of Deposit has no language transferring title to the servitudes. The defendants also argue that the LaNasas did not provide evidence that Mr. Albin Rochereau had the authority to act as the agent of the heirs when he filed the Act of Deposit, including the Act of Donation and Partition, in 1885, into the New Orleans public records.
On January 10, 1885, Mr. Rochereau filed into the public record the Act of Deposit that was executed before a notary, James Fahey, and served to enter the 1856 Act of Donation and Partition into the public records in Orleans Parish. The Act of Deposit stated in part:
... as is known to appearer [Rocher-eau], who was agent for the widow and heirs of Jean Roques in Charge as such of the said real property situated in the City of New Orleans, both anterior and subsequently to the said act of 1856 up to her death, and who afterwards continued to be the agent her [sic] for said property of said children and heirs. That after her death, her said four children, who survived her, enjoyed full possession of the respective pieces of real estate in this City allotted to them by said partition and received, through ap-pearer, the rents and revenues which accrued to them respectively thereunder.
And now, with a view of putting the respective titles of the said four children and heirs of record in the conveyance Office for the Parish of Orleans, appear-er, Albin Rochereau, declared that the full description of each of the pieces of real estate allotted as aforesaid, to the said four children and heirs is as follows
Rochereau provided the description of Lots 1, 2, 3, 4 and 5 and referenced a December 30, 1884 plat prepared by L. Surgi that referred to the alley as a “common alley for the five properties.” Reference was made to the de Armas and | sSurgi Plats. Rochereau stated on behalf of the Roques heirs that Lots 2 and 3 are subject to servitudes on the ground floor in favor of Lots 1, 2, 3, 4 and 5, designated in yellow on the sketch on the Surgi Plat. The Act of Deposit described the alley’s dimensions and acknowledged the right of way or servitude of use for each of the Lots.
The LaNasas state that the property description for one of the pieces of property provided in part:
*128 The property alloted [allotted] to said Jean Charles Leonce Roques, and designated as No. 133 Old Levee Street [Lot 2] ... which property is subject on the ground floor to certain servitudes in favor of the owners of lots Nos. 1, 3, 4 & 5 as shown by said sketch, [and] The property designated as a building in the Car-rick Court ... as Lot 5 ... and situated in the rear of lots Nos. 1, 2, 3 and 4 and of an alley leading to it from Levee street ... together with the buildings and improvements thereon and right of way through the alley shown on said sketch. [Emphasis added.][1]
Another lot partitioned to Marie Catherine Celine Roques was described as Lot 1 in the Act of Deposit as follows in part:
The property designated as No. 132 Old Levee Street, also allotted to said Marie Catherine Celine Roques, consists of a certain lot of ground in the square bound by Decatur ... on which it is designated as Lot 1 ... with the buildings and improvements thereon known as No. 259 Decatur Street, said property being entitled to the use of any alley as shown by said sketch.

Prescription

At the time of the Act of Partition discontinuous apparent servitudes could not be created by acquisitive prescription. However, the Comments under La. C.C. art. 740 (effective in 1978), states in pertinent part:
la(e) The modes of acquisition of servi-tudes under the Civil Code are not exclusive of other modes of acquisition to the same extent as heretofore recognized under the law. See e.g., Lake v. Louisiana Power & Light Company, 330 So.2d 914 (La.1976), and R.S. 19:14.
Other sanctioned modes of prescription apply to discontinuous apparent servitudes.
The defendants’ contention that Rochereau was not authorized to act as the Roques’ agent is refuted by the fact that ten years have prescribed from the date that the documents, the Act of Donation and Partition, as well as the Act of Deposit, were recorded in the conveyance records, even if no power of attorney were attached pursuant to La. R.S. 9:5682.
Further, under the Louisiana Civil Code of 1870, La. C.C. art. 760 provided:
He who assumes the quality of owner, and enjoys an estate as such in good or in bad faith, he who acts in the name of the owner, though he have no mandate from the owner, can acquire ser-vitudes, and the person granting them can not afterwards revoke them, for it is not to the person but to the estate they are granted. [Emphasis added.]
Presently, La. C.C. art. 735 states:
A predial servitude may be acquired for the benefit of the dominant estate or by any other person acting in his name or in his behalf.
The Comments under La. C.C. art. 735 provide in pertinent part:
This provision is new. It expresses the principal underlying Articles 759, 762 and 764 of the La. Civil Code of 1870. Thus a predial servitude may be acquired for the benefit of the dominant estate by a possessor in good or bad faith, any authorized or unauthorized mandatory, a manager of affairs, a person making a stipulation pour autri, a *129 co-owner, a usufructuary, and a tutor or a curator. [Emphasis added.]
In the present case, Rochereau acted in the name of the owner. Whether or not he was authorized by the owner, Rocher-eau filed the Act of Deposit into the Impublic records on behalf of the owner, Both the Act of Donation and Partition, as well as the Act of Deposit and the Surgi Plat, are presumptively valid. Rochereau described the servitude that had been established and exercised by the owners whom he claimed to represent.
Under the Ancient Records Doctrine, La. R.S. 13:3727 provides that any deed, conveyance, sale, lease, transfer, assignment, power of attorney, or other written act recorded in the conveyance records for not less than 19 years, whether notarial or private act, attested or not, and whether the signatures are proved or acknowledge or not, is presumed to bear the genuine signature of the maker and is admissible into evidence.
The Historical and Statutory Notes under La. R.S. 13:3727 provide: “The 1988 amendment changed the section and its heading by reducing the requisite period of recordation from twenty-two years to nineteen years, and by extending its application to judgments rendered by a court of competent jurisdiction.” See also La. C.E. arts. 901 and 803.
La. R.S. 13:3729 and R.S. 13:3730 provide that a document that has been recorded in the conveyance record of any parish for a period of 30 years or more is presumed genuine as executed. In Dixie Elec. Membership Corp. v. Jones, 360 So.2d 216 (La.App. 1 Cir.1978), the evidence was insufficient to overcome the presumption created by La. R.S. 13:3727, of the execution and genuineness of such an instrument. La. R.S. 13:3727 states that the act “shall be deemed prima facie proof of the contents of the original instrument.”
In the present case, the Act of Donation and Partition, the Act of Deposit, as well as the Surgi Plat, have been a part of the public records for over 30 years, are ^presumed valid, and establish that a servitude of use of the alley was common to Lots 1-5.

Acquisitive Prescription after 1978

The defendants also maintain that the plaintiffs have not acquired the servitude of use of the common alley by ten-years acquisitive prescription after La. C.C. art. 742 became effective in 1978.
La. C.C. art. 742 provides:
Art. 742. Acquisitive prescription
The laws governing acquisitive prescription of immovable property apply to apparent servitudes. An apparent servitude may be acquired by peaceable and uninterrupted possession of the right for ten years in good faith and by just title; it may also be acquired by uninterrupted possession for thirty years without title or good faith.
Under La. C.C. art. 742, acquisitive prescription is not retroactive but applies from the amendment’s effective date. Griffith v. Cathey, 99-923 (La.App. 3 Cir. 2/2/00), 762 So.2d 29, unit denied, 2000-1875 (La.10/6/00, 771 So.2d 85).
The defendants state that, to be subject to ten years acquisitive prescription, a servitude must be apparent; to be apparent, the works and constructions that are exterior signs of a servitude must be visible to the owner of the servient estate. Yianno-poulos, § 134, p. 384, note 4. The defendants assert that a shed was built over the portion of the alleyway behind the building at 1021 Decatur and remained there from the 1950’s until 1998. The defendants claim that the shed did not afford access to 1019 Decatur/Lot 1 for that entire period, *130 and no servitude was apparent so that acquisitive prescription of such a servitude could not have accrued during that time.
|12The LaNasas provided testimony of Marion LaNasa that the shed had a door at the rear of 1019 Decatur so that the property owners or their tenants of Lots 1-5 had continual access and use of the common alley from the mid-1940’s until 1995. The defendants assert that Joseph Valenti leased Lots 1 and 2 from the late 1940’s or early 1950’s until 1998. In January 1998, Khan purchased Lot 2 and terminated Valenti’s lease. Valenti continued to lease Lot 1 from the LaNasas. Khan demolished the shed.
Valenti testified that there was a back door from the outside of the shed that he sealed for security reasons approximately in 1995 when he was thinking of retiring. Valenti also testified that he used the alley for storage and for parking his car. Nellie Leveque agreed that Valenti used the alley for parking. She did not feel that she had to give Valenti permission to use the alley. Because the owners had apparent access to the entire alley by exterior signs, including the door of the shed, the servitude did not elapse from ten-years of non-use under La. C.C. art. 758.
The defendants also aver that the LaNa-sas did not have just title and therefore could not obtain the servitude by acquisitive prescription.
The Comments under La. C.C. Art. 742 state in pertinent part:
(c) Just title for the purpose of acquisitive prescription of ownership is defined in Article 3484 of the Louisiana Civil Code of 1870: “By the cases of the term just title, in cases of prescription, we do not understand that which the possessor may have derived from the true owner, for then no true prescription would be necessary, but a title which the possessor may have received from any person whom he honestly believed to be the real owner, provided the title was such as to transfer the ownership of the property.” By analogy, for the acquisition of a predial servitude by 10 years possession, the possesor [possessor] must have a just title, namely, a 113title that would have established the servitude if it had been granted by the true owner.
The Comments under La. C.C. art. 740 state in pertinent part:
(b) While the word “title” has many meanings, it is used in the source provision synonymously with juridical act; it includes a contract, a testament or other act such as sale by expropriation intended to create a predial servitude and is not limited to an instrument in writing. See McGuffy v. Weil, 240 La. 758, 765, 125 So.2d 154, 157 (1960): “The plaintiff attempts to equate Title’ as used in article [766] with the deed, or act of sale, by which the servient estate is acquired. He contends that, in order to create the servitude, the restriction must be incorporated in the deed conveying the land. Such a narrow construction, necessarily, does violence to the codal provision.... The conclusion is inescapable that ‘title’ as used in Article 766 refers to the method by which the servitude may be acquired and does not relate exclusively to the conveyance of the servient estate. It is a generic term which embraces any juridical act.”....
In Williams v. Wiggins, 26,060 (La.App. 2 Cir. 8/17/94), 641 So.2d 1068, 1073, the plaintiff claimed a servitude of access by acquisitive prescription. The appellate court stated: “Just title need not be derived from the true owner. It is enough that a deed contains language sufficient to convey access rights had the *131 grantor possessed such rights.” Good faith, which is a question of fact, is presumed and the party alleging bad faith must prove it. La. C.C. art. 3481; Land Development Co. of Louisiana v. Schulz, 169 La. 1, 124 So. 125 (1929); Haas v. Dezauche, 214 La. 259, 37 So.2d 441 (La.1948).
In the present case, there is no showing that the LaNasas relied on their act of sale and prior acts of sale that referred to the servitude of common use of the alley in bad faith or without just title. Pursuant to La. C.C. art. 742, the LaNasas had uninterrupted, unchallenged and unequivocal use of the alley for purpose of the ten-year acquisitive prescription from 1978 until after 1988.
114Further, in Weigand v. Asplundh Tree Experts, 577 So.2d 125 (La.App. 1 Cir.1991), writ denied 580 So.2d 379 (La.1991), the property owners were bound by their predecessor’s acquiescence in the construction of a power-line servitude. In the present case, subsequent documents after the Act of Donation and Partition, Act of Deposit, and Surgi Plat in the conveyance office identify the alley as a common alley or a servitude of use of Lots 1, 2, 3, 4, and 5. The 1904 Act of Sale from Marie Roques to Antonio LaNasa provided that the property sold was entitled to use of the alley and referred to the sketch of E. Surgi City Engineer dated December 30,1884. The Surgi sketch provides in yellow the precise location and dimensions of the alley upon which the servitude was established. In the acts of sale to the defendants, Khan and the Le-veques, reference is made to the servitude. The prior owners and tenants had access and use of the common alley. The defendants are bound by their predecessors’ acquiescence in the existence of the servitude of the use of the common alley.
A servitude of use over the common alley has been established.
Accordingly, the judgment of the trial court is affirmed.

AFFIRMED.

. The phrase “subject to” has been interpreted by Louisiana courts as the recognition of rights previously in existence rather than the creation of new rights. Texaco, Inc. v. Newton & Rosa Smith Charitable Trust, 471 So.2d 877, 880 (La.App. 2 Cir.1985), writ denied, 475 So.2d 1104 (La.1985).