J^SUSAN M. CHEHARDY, Judge.
This is a suit for declaratory judgment and injunctive relief. Defendants appeal a judgment finding that plaintiff has a servitude of passage over defendants’ property and ordering defendants to remove a fence they erected on the property. We reverse.
Marsha Trunk (hereafter “Trunk”) owns property at 6610-12 Bellaire Drive. She has owned the property since 1977; prior to that her father, Martial Voitier, owned it since 1958. Trunk’s property adjoins property at 6614-16 Bellaire Drive, which is owned by Patricia Mellen Berg, Carey L. Ernst Lambert, and Mark Lambert (hereafter collectively called “Berg/Lambert”).[1] Berg/Lambert bought the 6614-16 property in 1999 from Ivan Roby and Kittie Roby.
Each property has a house on it. Each house is approximately five feet from the common boundary. When Berg/Lambert purchased 6614-16 Bellaire, the area between the houses had a paved driveway ten feet wide on it (five feet on each property), which was accessible to both properties. At the time of the hBerg/Lambert acquisition, there was a boat parked in the back yard of the Trunk property at the end of the paved driveway, which has remained in the Trunk yard.
On May 4, 2002 Berg/Lambert sent a letter addressed to Lawrence Trunk (plaintiffs son, who is the tenant at 6610-6612), advising him that Berg/Lambert planned to place a retaining wall between the properties, fill the lot, and replace the concrete. The letter stated that once the retaining wall was constructed, its presence would obstruct passage of the boat parked in the back yard of the Trunk *924 property. The letter listed the construction deadline and advised that arrangements should be made to move the boat before it became trapped by the construction changes.
The boat was never moved and Berg/Lambert proceeded with their planned changes. In June 2000 Berg/Lambert removed the portion of the concrete driveway on their side of the property line, poured a retaining wall, and constructed a six-foot wooden privacy fence on the retaining wall that extends from the front yard all the way to the rear of the property.
On June 15, 2000, Trunk filed a suit for declaratory judgment to recognize a right or servitude of passage, for injunctive relief, and for damages. She alleged that the common paved driveway had existed between the properties for over 40 years, since at least 1958, and that the driveway permitted the only access to the rear of the Trunk property. She stated that since at least 1958 the owners of the Trunk and the Berg/Lambert properties, or their ancestors in title, have exercised actual, adverse, corporeal possession over the common driveway, which had been continuous, uninterrupted, peaceable, public, unequivocal, and within visible bounds.
Based on those allegations, plaintiff asserted the owners of both properties had acquired an apparent servitude over the common driveway through acquisitive prescription. She sought a declaratory judgment recognizing her right of passage or |4servitude of passage so acquired. Further, plaintiff sought an injunction to force defendants to remove the newly-eonstruct-ed fence, which was trapping the boat owned by plaintiffs tenant (her son, Lawrence Trunk). She also sought to compel defendants to restore the common driveway to its former condition.
In their answer, defendants generally denied the substantive allegations of the petition, except to admit they had erected a fence along the property line established by their legal title to their property and, further, that they had provided notice of their intention to erect the fence by certified mail to both plaintiff and her tenant.
In addition, defendants filed an exception of lack of subject matter jurisdiction and a reconventional demand, while plaintiff filed an exception of no cause of action to the reconventional demand. In their exception defendants asserted that Jefferson Parish lacks subject matter jurisdiction because the property is located in Orleans Parish; their reconventional demand sought to recover attorney’s fees, interest, and other damages sustained in defense of the suit. Plaintiffs exception asserted that defendants had no independent cause of action to recover attorney’s fees and costs from her. Plaintiff also filed a motion for summary judgment.
The motion for summary judgment and the exceptions were still pending at the time of trial. The court never ruled on either exception and never ruled on defendants’ reconventional demand. However, none of those issues have been raised on appeal.[2]
Prior to trial the parties stipulated to the following facts:
*925 |SA. Marsha Trunk owns residential property located at 6610-12 Bellaire Drive (the “Trunk property”).
B. Patricia Mellen Berg, Carey L. Ernst Lambert, and Mark Lambert (the “Defendants”) own residential property located at 6614-16 Bellaire Drive (the “Berg/Lambert property”).
C. The Trunk Property abuts the Berg/Lambert Property.
D. The legal description in the document through which the Defendants acquired their property in 1999 encompasses the portion of the pavement between the two properties but closest to the Berg/Lambert Property, including the portion of the pavement beneath the fence at issue.
E. The legal description in the document through which Marsha Trunk (or her family members, who are her ancestors in title) acquired her property in 1958 encompasses the portion of the portion of [sic] the pavement between the two properties but closest to the Trunk Property.
The parties also stipulated to the use of various exhibits, including photographs, surveys of both properties, the deposition of Ivan Roby (former owner of the Berg/Lambert property), and the letter dated May 4, 2000 from Mark Lambert to Lawrence Trunk.
In his deposition Ivan Roby testified he owned and lived at 6614 Bellaire Drive from 1961 to 1999. During that entire time the house next door was owned and occupied by members of plaintiffs family. There was an alleyway between the properties that was paved with concrete, which predated Roby’s ownership of the property. When he first moved in the alleyway was used as a walkway by Mrs. Voitier (plaintiffs mother). Roby did not use it as a walkway, because his property had a fence up to the back of his house. Mrs. Voitier had no fence, however, and she used the walkway to access her back yard.
Roby testified he did use the alleyway to park his boat, which he pulled up to his fence, which came up to the back of his house. He never thought he owned |fithe entire alleyway, but only the half of it along the fence line that was already there, but his boat straddled the walkway over onto the Trunk side. At one point Mrs. Voitier requested that he move the boat, so he moved it permanently. This was at some time prior to the late 1970s, because Mrs. Voitier died in the mid-to-late '70s.
According to Roby, plaintiffs family never used the alleyway as other than a walkway until “Young Larry” moved there and began using it to park his boat. Roby said the property was not used as a common driveway because the original fence prohibited passage of a vehicle through to the back yards.
Roby stated he had informed defendants that the alleyway was never used as a driveway. However, he admitted that “Mackey” Voitier, plaintiffs brother, had parked an automobile and motorcycle on it at times. Roby said the parking of his boat and Mackey’s car and motorcycle occurred at “all separate times,” “spread out ... none of it conflicted with anyone else ... if you had something to store you put it there as long as it wasn’t in the way. Nobody complained about it.”
Roby testified that prior to the act of sale, defendants asked him to speak to Lawrence Trunk about moving the boat. However, Roby did not recall ever doing so; Roby said he knew Trunk “was in the process of doing something with it.” Roby said Trunk had some concrete work done in front of his house, where he parked his *926 automobile. Roby said there was space in front of the Trunk house for a driveway that would not interfere with the driveway in front of Roby’s house.
Asked whether there was any way to access either of the back yards other than by the alleyway, Roby said he had once moved a shed into his backyard by hauling it along the levee that runs behind both properties and removing a portion of the back fence to get it into his yard. However, Roby said, using the levee in that|7way is “not quite legal.” Roby also stated he had seen the new fence placed by the defendants and to his eye it appeared to be in line with the original fence.
At trial the only testimony was from Martial Voitier, Jr., plaintiffs brother, also known as “Mackie.” He testified that his parents purchased the house at 6610-12 Bellaire Drive in 1958, when he was in high school. Roby purchased the property at 6614^16 later. Voitier testified he moved away from his parents’ home when he got married, in approximately 1967 or 1968. After his parents’ death, Voitier owned the property with his sister until he sold his share to her.
Voitier testified there was a common driveway between the houses, just wide enough to put one car down the middle. Voitier said the two houses, 6610-12 and 6614-16, originally were built as four-unit rental property by the person who sold the house to the Voitier’s parents. Voitier’s parents considered buying both properties, but ultimately decided only to buy the one house. The concrete driveway was put between the two houses by the original owner, who gave Voitier’s parents an option of constructing a carport or garage in the back yard. Voitier said the common driveway would have been used to access the back yard carport, but his parents elected not to have a carport built in back.
Voitier said that Roby parked a fishing boat in the common driveway for years. Voitier said when he needed to get into the back, he would ask Roby to move the boat and Roby would move it. The only entry to the back yard was at the very end of that common driveway.
In addition, Voitier testified, he himself used the common driveway when he wanted to work on his car. He did not recall either he or his parents ever having any discussion with Roby about the use of the driveway or asking for permission to use it. He said he never considered the question of who owned the driveway until this lawsuit. They always had use.
IsVoitier admitted that no one in the his family ever owned a boat, so they never stored one on the common driveway. From the 1950s through the 1980s, they had no boat in the common driveway. He also admitted that one could get to the back yard of the Trunk property by walking only on the Trunk side property line. However, he said, one could not get a vehicle or a boat into the back yard without using all of the common area. He also admitted that simply parking on the other side of the common driveway would not mean he would own it. He said they and their tenants used it as a convenience.
Voitier said that since defendants built their fence along the property, one can no longer drive into the back yard of the Trunk property. He admitted that one can still walk into it, however, and that his nephew’s boat has not been in the Trunk back yard for 30 continuous years.
The trial court took the matter under advisement and rendered judgment on November 14, 2002 in favor of plaintiff and against defendants, declaring that plaintiff has acquired a servitude of passage over the driveway via acquisitive prescription and ordering that defendants remove the fence erected between the two properties.
*927 On appeal defendants assert that the trial court erred in finding that plaintiff proved she or her ancestor-in-title had adverse corporeal possession of the property, because any use of the property by plaintiff/her ancestor-in-title was by permission of defendants’ ancestor-in-title.
In opposition plaintiff contends that the trial court was not manifestly erroneous in determining that plaintiff had acquired a servitude of passage over the driveway through acquisitive prescription.
A predial servitude is a charge on a servient estate for the benefit of a dominant estate, where the two estates belong to different owners. La.C.C. art. 646. 19“Predial servitudes may be natural, legal, and voluntary or conventional. Natural servitudes arise from the natural situation of estates; legal servitudes are imposed by law; and voluntary or conventional servi-tudes are established by juridical act, prescription, or destination of the owner.” La.C.C. art. 654.
Legal servitudes are limitations on ownership established by law for the benefit of the general public or for the benefit of particular persons. La.C.C. art. 659. The right of passage is a legal servitude for the benefit of enclosed estates, in which the owner of an estate that has no access to a public road may claim a right of passage over neighboring property to the nearest public road. La.C.C. art. 672; La. C.C. art. 689. “Enclosed estates” means lands shut off from access to public roads by reason of their being entirely surrounded by other lands. English Realty Co. v. Meyer, 228 La. 423, 82 So.2d 698, 700 (1955). It is undisputed that plaintiffs property frontage is along a public road, namely, Bellaire Drive. Therefore, her property is not an enclosed estate and the legal servitude of passage cannot apply to her property.
The question is, however, whether there is another real right plaintiff can claim. In addition to the legal right of passage there is a predial servitude of passage, which is “the right for the benefit of the dominant estate whereby persons, animals, or vehicles are permitted to pass through the servient estate.” La.C.C. art. 705. There also is a predial servitude of right of way. La.C.C. art. 706.
Predial servitudes are either apparent (that is, perceivable by exterior signs) or nonapparent (those that have no exterior sign of their existence). La.C.C. art. 707. If there was a servitude of passage or a right of way in this case, it was an apparent servitude because it was manifested by the presence of the paved concrete driveway.
| ^Establishment of a predial servitude is an alienation of a part of the property and, thus, is governed by the laws governing alienation of immovables. La.C.C. art. 708.
La.C.C. art. 740 provides that apparent servitudes may be acquired by title, by destination of the owner, or by acquisitive prescription. Article 740 was newly added by Acts 1977, No. 514, § 1, eff. Jan. 1, 1978. It changed prior law, which stated that only continuous and apparent servi-tudes could be acquired by title, by destination of the owner, or by acquisitive prescription.
However, Article 740 made a substantive change in the law and thus cannot be applied retroactively. La.C.C. art. 740, Revision Comments—1977, Comment (a). See also, Wetzel v. Khan, 0-1083, p. 4 (La.App. 4 Cir. 9/19/01), 797 So.2d 122, 126, writ denied 01-2804 (La.1/4/02), 805 So.2d 202.
Prior to revision by Acts 1977, No. 514, *928 § 1, effective Jan. 1, 1978,[3] the Civil Code articles on predial servitudes provided that servitudes were either continuous or discontinuous; discontinuous servitudes were “such as need the act of man to be exercised.” La.C.C. art. 727 (repealed 1978). Servitudes were either “visible and apparent or nonapparent.” La.C.C. art. 728 (repealed 1978). . Continuous nonapparent. servitudes and discontinuous servitudes, whether apparent or not, could only be established by title. La.C.C. art. 766 (repealed 1978). Destination by the owner was equivalent to title only with respect to continuous apparent servitudes. La.C.C. art. 767 (repealed 1978).
Consequently, prior to the 1978 revisions the right sought here would have been classified as a discontinuous servitude, because it required the act of man to exercise it. Under the pre 1978 articles, a discontinuous servitude could only be In established by title. La.C.C. art. 766 (repealed 1978). The new Article 740 cannot be applied retroactively to permit acquisitive prescription of what was formerly a discontinuous servitude. Wetzel, 00-1083 at p. 4, 797 So.2d at 126, writ denied 01-2804 (La.1/4/02), 805 So.2d 202.
Article 740 also allows acquisition of a servitude by destination of the owner. “Destination of the owner” is a relationship established between two estates owned by the same owner that would be a predial servitude if the estates belonged to different owners. La.C.C. art. 741. When the two estates cease to belong to the same owner, unless there is express provision to the contrary, an apparent servitude comes into existence of right. Id.
At first destination of the owner seems applicable here, considering Voitier’s testimony that the common driveway was made by the person who sold the property to his father. However, Article 741 also was newly added by Acts 1977, No. 514, § 1, and it legislatively changed the former distinction between discontinuous and continuous servitudes. As such, it is substantive law and applies prospectively only. McCann v. Normand, 97-103, p. 8 (La.App. 3 Cir. 6/4/97), 696 So.2d 203, 207. Because it can only apply prospectively, it cannot apply to the time when both properties in this ease were owned by the same person.
The laws governing acquisitive prescription of immovable property apply to apparent servitudes. La.C.C. art. 742. “An apparent servitude may be acquired by peaceable and uninterrupted possession of the right for ten years'in good faith and by just title; it may also be acquired by uninterrupted possession for thirty years without title or good faith.” Id. However, Article 742, like Articles 740 and 741, was newly added by Act 514 of 1977. It too is a substantive amendment that cannot be applied retroactively. McCann v. Normand, 97-103 at p. 8 (La.App. 3 Cir. 6/4/97), 696 So.2d 203, 207.
[12In conclusion, we find the trial court erred in ruling that the plaintiff is entitled to either a servitude or a right of passage and in ordering the defendants to remove the fence they erected on their property line. Accordingly, the judgment is reversed and we enter judgment in favor of defendants.
For the foregoing reasons, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of defendants, Patricia Mel-len Berg, Carey L. Ernst Lambert, and Mark Lambert, and against plaintiff, Mar *929 sha Trunk, dismissing plaintiffs demands against defendants with prejudice. All costs of the trial and of this appeal are assessed against the plaintiff, Marsha Trunk.

REVERSED AND RENDERED.

. These two properties both straddle the parish line between Orleans Parish and Jefferson Parish. The greater portion of each property, including the section at issue here, is in Orleans Parish. However, La.C.C.P. art. 80(B) states that an action regarding immovable property situated in more than one parish may be brought in any of the parishes. Hence, venue is proper in Jefferson Parish.

. Lack of subject matter jurisdiction is a matter which this Court can address on its own motion. Boudreaux v. State, Dept. of Transp. and Development, 01-1329, p. 8 (La.2/26/02), 815 So.2d 7, 13. Nevertheless, it is not applicable here because Louisiana district courts have jurisdiction over all civil matters. La. Const. Art. 5, § 16(A)(1). In fact, defendants' exception was improperly titled, because the content of their memorandum in support of the exception shows it was directed not to subject matter jurisdiction, but to venue. As noted previously, however, venue is proper here. See, Note 1, supra.

. Title IV of Book II of the Louisiana Civil Code, Predial Servitudes, previously consisting of Articles 646 to 822, was revised, amended and reenacted by Acts 1977, No. 514, § 1 to consist of Articles 646 to 774.